proven her testimony false and biased, the D.A. knowingly allowed J. Timmons to testify falsely."

2. "Prosecutor misconduct. The assistant D.A. Teresa Clingman told the jury that I confessed to the murder to a defense witness which is a completely false statement. There is nothing in the records or in the testimony that indicated this could be true. The false statement was made in an attempt to confuse and mislead my jury."

3. "Prosecutor misconduct. D.A. Rick Berry had Mark Ray give a victim impact statement against me. Mark Ray was a co-defendant who admitted to shooting Doyle Douglas and was given special consideration for his testimony against me, (sic) he was <u>not</u> a victim as the D.A. led my jury to believe. The victim impact statement could have caused the jury to hold Mark Ray in a light of less guilt and place more belief in his testimony."

4. "Prosecutor misconduct. Assistant D.A. Teresa Clingman stated that I did not express remorse when she was aware of the judge's ruling on hearsay. Every time my counsel asked a defense witness about whether or not I had expressed remorse, Mrs. Clingman objected."

## APPLICANT'S PRO SE COMPLAINTS
## LETTER TO THE COURT DATED AUGUST 15, 2005
## FILED AUGUST 25, 2005

1. Ineffective assistance of trial counsel. "The trial counsel in cause no. CR-27,181 was ineffective by failing to introduce David Page as a defendant in the guilt innocence jury instructions pertaining to the murder of Doyle Douglas."

"Facts: The ballistic report, autopsy report, and other reports in relation to the ballistic and autopsy reports, show that the person responsible for the first two shots to Doyle Douglas is David Page. This claim is made stronger by David Page's own admission of his location at the time Doyle Douglas was shot. The jury was not provided with an opportunity to consider this evidence that exonerates appellant in the shooting of Doyle Douglas. The instructions to the jury hindered the appellant's ability to have a fair trial by jury, thus violating appellant's 6th and 14th amendment rights. Due to this violation

appellant's incarceration and execution would and does violate appellant's 8th amendment rights."

## APPLICANT'S PROS SE COMPLAINTS
## LETTER TO THE COURT DATED SEPTEMBER 12, 2005
## FILED OCTOBER 12, 2005

"In cause number CR-27,181, the court committed harmful error by failing to introduce David Page as a defendant in the guilt innocence jury instructions pertaining to the murder of Doyle Douglas. The courts (sic) failure to introduce David Page as a defendant in both counts of the indictments (sic) hindered the juries options as well as guided the jury towards a wrongful conviction of the appellant. The jury instructions were presented to the jury by the judge, which give the impression that these instructions are the words and guidance of the judge. As a result of the harmful error the appellant was denied a fair trial by the jury, thus violating appellant's 6th and 14th amendment rights. Due to this flagrant violation appellants (sic) incarceration and impending execution would and does violate appellants (sic) 8th amendments rights."

## APPLICANT'S PRO SE COMPLAINTS
## LETTER TO THE COURT DATED JANUARY 10, 2006
## FILED UNKNOWN

1. "The monies allocated in 11.071 state writ proceedings, has been depleted. So I was told. Your Honor, there is still twelve people that need to be questioned, that have information that is beneficial to me that affects both portions of my trial."

2. "Also I need a few items located & tested which never have been that I know will provide exculpatory evidence in this case. I have informed EVERY attorney I have had, about these items, yet to this day no attempt has been made to locate them, & have them tested."

3. "I received a letter from an inmates (sic) relative in concern of some facts, that was revealed by a co-defendant in this case. The co-defendant confessed to another inmate about one of the murders. From what I have been told he has done a whole bunch of talking. However only one has been

willing to come forward for I just received the letter w/this information on January 6, 2006. It was posted Jan.3.06. I have written to Ori White w/these details & some. I am sending his letter at the same time. Now I believe that Ground of Review Eleven of the 11.071 state writ that was filed by Gary Taylor preserves this new information. I am afraid to give names & so forth in this letter. As I do not want to run the risk of the District Attornies (sic) office pressuring the inmate to lie, change his story &/or be silent. Which the D.A's have shown themselves to do in the past. The inmate could be threatened with parole factors (sic) & so forth. I am asking the court to provide a grace period so that this inmates (sic) affidavit can be filed with the 11.071 state writ."

4. "In considering "Ground for review 13 and 14 of the 11.071 writ filed by Gary Taylor, I asked the court to please consider a statement made by David Page. While on the stand, & being questioned by Paul Williams as to why he changed his story, David Page responded along the lines of 'because Mr. Lucky (sic) told me to.' This was in reference to Samuel Petrey being shot. As the court is aware of, affidavits have been filed indicating Prosecutor & Police Misconduct in this case cause No. 27-181. David Pages (sic) statement of why he changed his story supports these affidavits."

5. [Ballistic Reports]. "I also would like to bring the courts attention, that in Ground for Review 11 & 12 in the 11.071 writ filed by Gary Taylor, he makes mention of the lawyers being ineffective for their failure to adequately submit & preserve the ballistic reports & other associated reports that provides exculpatory evidence n cause No. 27-181. I as well have filed pro-se letters this court, in concern of Ineffective Assistance of counsel in relation to the ballistic reports & other associated reports. ... Mr. Tim Counce, the firearms examiner for D.P.S. of Austin, could have returned to Midland so that that the defense lawyers could properly & affectively (sic) admitted the associated ballistic reports, that Mr. Counce made which provides exculpatory evidence. Which is, as has been stated in previous pro se letters to this court, that David Page is the person responsible for the first two shots to Doyle Douglas. This is unbiased <u>scientific</u> evidence. The prosecutors case relied on co-defendant

51

testimony. These reports would have discredited that testimony."

6. "I would also like to point out to the court, that when the relative of Mr. Samuel Petrey, was released from the jury in cause No. 27-181. It was the Court that informed the remainder of jury that she was a relative of the victim. I have raised ineffective assistance of counsel for failing to request a mis-trial (sic)."

7. "I would also bring to the courts (sic) attention that the D.A.'s office <u>DID</u> <u>NOT</u> turn over all evidence in association w/ Cause no. 17,181. T. clingman was in possession of a letter that was sent to me by someone in the Midland County Jail. I saw it in her personal binder I guess you would call it. The binder was open on the D.A.'s desk in the courtroom. I pointed this out to co-counsel Ian Cantacuzene to bring to the judges (you) attention (sic). The D.A. had repeatedly stated that they had <u>no</u> copies of any letters. I saw the letter. Ian saw the letter. Why it did not get brought to your attention, I dont (sic) know. This is a concern as it could have been another inmate trying to inform me of a co-defendant bragging, as was repeatedly done. I could not read the senders name. Though I could clearly see my name on the envelope. I could tell that it was from the Midland County Jail due to the distinctive style & address tampon the envelope that was used by M.C.So in 2001-2003. I can not state if the letter contained evidence for me or against me. Unless the D.A. decides to hand it over, we will never know."

52

March 21, 2005

From: Clinton Young #999447
Polunsky Unit
Death Row



To: Attorney at Law
Gary Taylor
P.O. Box 90212
Austin, Tx 78709

This letter is pertaining to State Writ of Habeas Corpus 2/26/05
Greetings. I am writing this in regards to the issues, that I would like raised in my State Writ of Habeas Corpus. These issues pertain to misconduct during my trial and absolute scientific evidentiary proof of my innocence. If all of these issues that pertain to innocence was presented at my trial, it could have lead to a reasonable peson on my jury having doubt and voting not guilty. At the least it could have resulted in a vote of no for special issue #1, #2 or #3 which would have resulted in a life sentence. These issues are:
1. The ballistics reports that line out the numbers used to identify all the bullets, from victim #1 being Doyle Douglas, was not admitted into evidence. These reports when matched with the personal records of the forensic pathologists that conducted the autopsy on Doyle Douglas shows that I could not have been the shooter. They show this fact by indicating that the gun that Mark Ray "admitted" to shooting Doyle Douglas with, was responsible for the gunshot wound on the right side of Doyle Douglas's head. In the ballistics report of Mr. Tim Counce, he states that the .22 revolver handgun Mark Ray used was not responsible for the other two bullets. In his report he identifies the bullet "not" fired by the Colt huntsman .22 pistol as #16 I. He states that "they are unable to identify or <u>eliminate</u> the submitted .22 caliber class projectile item #16 I as being fired from the submitted RG revolver (Mark Ray's gun). He then goes on to say "it is our opinion that the above mentioned projectile <u>"was not" fired from the submitted colt pistol.</u> In the autopsy report this gunshot projectile is described as gunshot wound #3, which was to the right side of Doyle Douglas's head. The other 2 projectiles which was identified in the ballistics report by Tim Counce as #16 G and #16 H. Tim Counce determined this fact. "We were unable to identify or eliminate the submitted .22 caliber projectiles item #16 G and #16 H as being fired from the submitted Colt pistol. It is our opinion that the above mentioned projectile s <u>"were not"</u> fired from the submitted RG revolver" These projectiles are described in the autopsy report as gunshot wound #1 and #2. The forensic pathologist was just using #1, #2, and #3 as reference numbers for this report. However, in her actual identifying of the bullets by way of labeling them for when she sent them to Mr. Counce to conduct his test, gunshot wound #3, which was to the right side of Doyle Douglas's head, lines up with projectile #16 I. Gunshots #1 and #2 lined up with the projectiles #16 G and #16 H. Meaning it is clear by unbiased scientific evidence that Mark Ray is responsible for the gunshot to the right side of Doyle Douglas's head. (It is a fact that he admitted to shooting Mr. Douglas.) Now throughout the trial the co-defendants all said I was sitting in the passenger side of the car and that Doyle Douglas was in the drivers seat. They said I shot Mr. Douglas twice and then when he was placed inthe creek that Mark Ray shot him once. The D.A. indicated that Mark Ray shot Doyle Douglas in the left side of the head and that I supposedly

shot him in the right side and back of the head which according to the words of the co-defendants would have been the only way I could have shot Mr. Douglas in the car. However, the scientific reports clearly show that the gun Mark Ray used is responsible for the wound to the right side of Mr. Douglas's head. The other gun that David Page and Mark Ray indicated that I used was responsible for the gunshot wounds to the left and back of Mr. Douglas's head. Now, if I am sitting inside of a small car, to the right side of a person, there is no way that I could have shot that person in the left side of the head. There was no gunshot residue on skin, meaning the shot was fired at 3 feet or greater. There was no gunshot residue on any of the three wounds. All of this information, if presented properly and with the reports of Tim Counce and Jill Urban, the forensic pathologist, admitted for the jury to see, shows that I could not have shot Doyle Douglas and that the shots to the left and back of the head are consistent as being fired by David Page, whom was standing to the left of Mr. Douglas outside the car on the drivers side with the door open. The wound to the right side along with the reports and Mark Rays admission of guilt, clearly shows that it was Mark Ray that was responsible for that wound. If all this evidence would have been presented to the jury, it could have caused a reasonable person to have a doubt and voted not guilty to the murder of Doyle Douglas, or it could have caused a vote of no to special issue # 2 which would have resulted in a life sentence.

My lawyer, Paul Williams, was aware of this evidence, but chose not to admit it by calling Tim Counce back to the stand in order to explain and admit all of his reports, so that the jury could have a full understanding as to what happened.

#2 The car that belonged to Doyle Douglas was never tested. There were 2 shell casings found in the car. The D.A. presented the theory that these shell casings show that the shooter was in the car. The shell casings matched the colt pistol, which is supposedly responsible for 2 of the gunshot wounds to Doyle Douglas. The D.A. was trying to present the fact that the shell casing was in the car as evidence that I shot Doyle Douglas. However, I informed both of my attorney's that the dash and steering wheel was shot inside the car, which is where the shell casings came from.

Ann Hinkle, whom is a FBI agent performed evidentiary work on Mr. Douglas's car. She described a defect on the dash that had burn marks on it. She never did a test on this defect. I informed my attorney's that the car needed to be tested and that if tested the defects would prove to be bullet holes, and would show that the shell casings was from when the dash was shot. This evidence along with the ballistics report would show that the shooter was most likely from the outside of the car and that I could not have been the shooter. I told my lawyers to conduct the test on the car months prior to my trial. The tests were never conducted, nothing was done. My lawyers did try to contact Mrs. Ann Hinkle to discuss the case, yet she would not return the call. This evidence would have disproved the states theory that I shot Doyle Douglas in the car. This would lead the jury to conclucde that I did not and could not have shot Mr. Dougla

#3 Ineffective assistance of counsel.

When the D.A. admitted the Texas Youth Commisions records into evidence, my attorney failed to object. They should have done so because they know that the record contained reports on other inmates regarding violent threats. The jury might have read the reports and assumed it was on me. Since the records was said to be mine which might have caused them to vote yes for special issue #2, regarding future violence. I told my attorneys that I wanted them to object to the admission of this record due to it being "tainted". They told me " don't worry about it, they won't read that record it is too thick". They took a gamble on my life.

#4 Ineffective assistance of cousel.
My attorneys failed to investigate claims of the co-defendants conspiring through an ex-girlfriend of David Page. The District Attorny in closing aruguments stated that they could not have colaberated their story because both were locked up. They did colaberate through a mutual friend. If this claim would have been investigated and presented to the jury then it might have caused some or all to have enough doubt to vote not guilty to capitol murder.

#5 Ineffective assistance of counsel.
My attorneys did not request a mis-trial when it was discovered that a relative of Sam Petry (sp.?) was on my jury. She was an alternate jury member but she was in direct contact with my jury and was even in the jury room with them during court breaks. She was there when the jury asked if it was okay to pray, so she had a chance to bond with the jury. This might have caused the jury to want to convict me due to the relatives influence. I requested that they request a mis-trial. My request was ignored.

#6 J. Timmons testified that I assaulted her while fighting another student at the Texas Youth Commission. She stated that when she tried to break up the fight I started to hit her. At the time of trial we did not have her 225 incident report which gave a detailed descrption of the fight. Upon coming to death row, I was sent some of the paperwork from my case and history. I located the 225 incident report that was written by J. Timmons. No where in this report does she say that I hit her! If I would have hit her, it would have been written in her incident report. Mrs. Timmons lied to my jury. I would like something filed to show that she lied on the stand. If the jury would have seen this incident report, it would have discredited J. Timmons and since I had no other assaults against an officer, it could of had an impact on how they voted for special issue #1 dealing with future dangerousness.

#7 Ineffective assistance of counsel.
My attorneys failed to call Margaret Ann Font and Mary Hall both whom was teachers of mine. Both could have and would have spoken good about me. The only teachers called from schools that I attended outside of T.Y.C. was teachers that spoke negative about me, so both should have been called to show that I was a good person and if they was called it could have had an influence on the jury for special issue #3.

#8 I never got a chance to show the jury that I expressed remorse. When my lawyers went to ask my Mother, the D.A. objected and the judge upheld this objection. The judge later sited a case that said people could say that the defendant expressed remorse but could not say what he said. My lawyers failed to get this important detail in. So the jury could have thought that I did not have any remorse. This could have influenced their vote on special issue #1 and #3.

#9 In closing arguments District Attorny Clingman told the jury that I admitted to the murders to a defense witness. This is incorrect. There is nothing on record about this. My lawyers failed to object to the prosecuters misconduct for lying to the jury. This "false" statement could have mislead the jury into convicting me. I would like prosecutorial misconduct filed. I would also like to have ineffective assistance of counsel filed because my lawyers failed to object to this false statement.

#10 Ineffective assistance of counsel.
My lawyers failed to impeach Debbie Sanders by failing to question her about the conversation she had

55

with Carla Sexton, in which she told her that she clearly heard MarK Ray brag to Patrick Brooks that he shot Doyle Douglas. This also would have affected Patrick Brooks testimony because he did lied and told the jury that I was the one that admitted the killing of Doyle Douglas to him

#11 I did not want Mrs. Guerreo on my jury. I informed my lawyers of this. I asked that she be struck from my jury due to the fact she had trouble speaking English and ran the risk of not fully understanding the scientific evidence presented She was also seen dozing off while in the jury box with a witness on the stand. I informed my lawyer of this, he told me not to worry about it. He didn't want to say anything to embarrass Mrs. Guerreo. If she would have been struck, Mrs. Gentry would have been on my jury. It was reported that she said that she would never convict me of capitol murder.

#12 My lawyers failed to challenge my county jail records. There were reports that had a negative impact on me. One of which being a report that I had the information to all the jury members and was going to get a hung jury. This is not what was said. I told an inmate that they gave me all the potential jury members info and "he" said "that sounds like a hung jury to me". Because this report was never challenged it could have caused the jury to feel threatened and want to sentence me to death.

#13 My lawyers failed to present evidence of my being sexually abused at the age of 5 and 13. This evidence could have had an impact on the jury and could have caused them to vote yes on special issue #3.

#14 I also want something filed on prosecutorial misconduct on Rick Berry. He had Mark Ray give a "victim" impact statement against me. Mark Ray admitted to shooting Doyle Douglas. He was not a "victim" and should not have been allowed to give a victim impact statement against me. This could have caused the jury to lessen his guilt and be more inclined to convict me. If the prosecution believed Mark Ray to be a victim, then he would not have been in jail for capitol murder. Also Mrs. Clingman stated that I did not show any remorse, knowing that the judge had previously upheld her objection to my family and friends saying that I showed remorse. Mrs. Clingman was also in possession of a letter that was not turned over to the defense. I saw this letter in her file on the D.A.'s desk. It was a copy of an envelope that was mailed to me. I informed my lawyer and he never mentioned it to the judge.

In closing, I would like something raised in my State Writ of Habeas Corpus on each of these issues. I want to see a final draft of my brief before it is filed to insure that all claims are raised at state level, so as not to be procedurally defaulted.

Each of these issues can be proven. I look forward to your response.

Sincerely,

Clinton Young

56

16. Give the name and address if known of each attorney who represented you at the following stages of the judgment attack herein:

(a) Preliminary hearing, arraignment, trial, sentencing: Ian Cantacuzene, 203 W. Wall Street, Midland, TX 79701; and Paul Williams: 220 N. Loraine St., #1125, Midland, TX 79701.
(b) On appeal: J. K. (Rusty) Wall, P. O. Box 50123, Midland, TX 79710-0123
(c) On state post-conviction proceedings: Gary Taylor (now withdrawn with court permission)
(d) Ori White, 107 E. 4th Street, Ft. Stockton, TX 79735.

17. Were you sentenced on more than one count of an indictment or on more than one indictment in the same court and at the same time? Yes, the jury found me guilty of capital murder by committing multiple murders in the same criminal episode and murder while in the process of robbery and/or kidnapping.

18. Do you have any future sentence to serve after you complete the sentence imposed by the judgement under attack? No.

Wherefore Petitioner prays the Court Grant Petitioner the relief to which he may be entitled in this proceeding.

Respectfully submitted

J. K. (RUSTY) WALL
State Bar No. 20756500
Attorney at Law
2500 N. Big Spring, Ste. 125
P. O. Box 50123
Midland, Texas 79710-0123
432/682-1522    FAX: 432/682-510

ORI T. WHITE
Attorney at Law
State Bar No. 21321600
107 E. 4th Street
P. O. Box 160
Ft. Stockton, TX 79735-0160
432/360-9286

57