## EXHIBITS TO WRIT

1. First Amended Indictment

2. State Court Judgment Counts I and II

3. Punishment Charge

4. Court of Criminal Appeals Opinion 9/28/05

5. Cert. Denial on Appeal          4/ 3/06

6. Court of Appeals Opinion on State Writ 12/20/06

7. Amber Lynch Statement (unsigned)

8. Particia McCoy Statement

9. Darnell McCoy Statement (unsigned)

10. Exhibit 147 from Trial ; the TYC Records



1/8/03

# FIRST AMENDED INDICTMENT

## NO. CR 27,181

| | | |
|---|---|---|
| THE STATE OF TEXAS | * | IN THE DISTRICT COURT |
| | * | |
| V. | * | 385TH JUDICIAL DISTRICT |
| | * | |
| CLINTON LEE YOUNG | * | MIDLAND COUNTY, TEXAS |

Bond: $500,000

Offense:  CAPITAL MURDER

### INDICTMENT

**IN THE NAME AND BY AUTHORITY OF THE STATE OF TEXAS:**

THE GRAND JURY, for the County of Midland, State of Texas, duly selected, impaneled, sworn, charged, and organized as such by the 385th Judicial District Court for said County at the January Term of 2002 of the said Court, upon their oaths present in and to said Court that CLINTON LEE YOUNG, hereinafter styled Defendant, on or about the 26th day of November A.D., 2001, and before the presentment of this indictment in the County and State aforesaid did then and there intentionally and knowingly cause the death of an individual, Samuel Petrey, by shooting him with a firearm, and on or about the 25th day of November A.D., 2001 in the County of Harrison and State of Texas during a different criminal transaction, the said CLINTON LEE YOUNG,

did then and there intentionally and knowingly cause the death of an individual, Doyle Douglas, by shooting him with a firearm; and the said CLINTON LEE YOUNG murdered the said Samuel Petrey and the said Doyle Douglas pursuant to the same scheme and course of conduct;

## PARAGRAPH II

AND THE GRAND JURORS AFORESAID upon their oaths aforesaid, do further present in and to said court that CLINTON LEE YOUNG, hereinafter styled Defendant, on or about the 26th day of November A.D., 2001, and before the presentment of this indictment, in the County and State aforesaid, did then and there intentionally cause the death of an individual, Samuel Petrey, by shooting him with a firearm, and the said CLINTON LEE YOUNG did then and there intentionally cause the death of the said individual in the course of committing and attempting to commit the offense of kidnapping and robbery directed against Samuel Petrey,

against the peace and dignity of the State.

/s/ Diane Cuevas
FOREMAN OF THE GRAND JURY

The amended indictment is approved, ordered filed of record and substituted for the original indictment the

We, the jury, find beyond a reasonable doubt that the defendant, CLINTON LEE YOUNG, is guilty of the offense of CAPITAL MURDER of Samuel Petrey as charged in paragraph II of the indictment.


March 26, 2003                          /S/ JAMES BOBO
DATE                                    PRESIDING JUROR


And on the 27th day of March, 2003, this cause being again called, the State appeared by her District Attorney and the defendant, CLINTON LEE YOUNG, appeared in person, his counsel also being present, and the same jury being called to assess the punishment, evidence was presented to the same jury in the matter of assessing punishment. The same jury after hearing all the evidence presented by the State and the defendant for the purpose of assessing punishment, and having heard argument of counsel, again retired in charge of the proper officer to consider their verdict, and afterward were again brought into court by the proper officer, the defendant and his counsel being present, and in due form of law returned into open court the following verdict, which was received by the Court and is here now entered upon the minutes of the Court, to-wit,


ISSUE NO.1

Do you find from the evidence beyond a reasonable doubt that there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society? Answer by stating, "yes," (there is a probability) or "no," (there is not a probability). Answer by stating "yes" or "no."

Answer: YES


ISSUE NO. 2

Do you find from the evidence beyond a reasonable doubt that the defendant, himself, actually caused the death of the deceased individuals or he did not himself actually cause the death of the deceased individuals, but he intended to kill the deceased individuals or anticipated that human

life would be taken?  Answer by stating "yes" or
"no."

Answer: YES


**ISSUE NO. 3**

Do you find from the evidence, taking into
consideration all of the evidence, including the
circumstances of the offense, the circumstances of
the defendant, his character and background, and
the personal moral culpability of the defendant,
that there is a sufficient mitigating circumstance
or circumstances to warrant that a sentence of
life imprisonment rather than a death sentence be
imposed?  Answer by stating "yes" or "no."

Answer:  NO


     We, the jury, having answered the foregoing
issues, return the same into Court as our verdict.


<u>11TH DAY OF APRIL, 2003</u>          <u>/S/ JAMES BOBO</u>
DATE                                   PRESIDING JUROR


     **IT IS THEREFORE, CONSIDERED, ORDERED, ADJUDGED, AND
DECREED** that the said Defendant, CLINTON LEE YOUNG, is
guilty of the felony offense of **CAPITAL MURDER** as charged in
paragraph I and II of the indictment, and that the Defendant
committed the said offense on the 26TH DAY OF NOVEMBER, 2001
and that the punishment of the said Defendant is fixed at
**DEATH,** and that the State of Texas do have and recover of
and from the said Defendant all costs in this proceeding
incurred for which let execution issue.

     And the Defendant being asked by the Court if
sufficient reason existed why the sentence of this Court
should not be pronounced, failed to give such reason;
whereupon the Court proceeded, in the presence of the said
Defendant and his attorney to pronounce sentence as follows:

     **WHEREAS,** the Defendant, CLINTON LEE YOUNG, has been
adjudged guilty of the offense of **CAPITAL MURDER** by the jury
and the jury having further answered that there **IS** a
probability that the said Defendant would commit criminal
acts of violence that would constitute a continuing threat

## CERTIFICATE OF FINGERPRINTS

I, the undersigned witness, hereby certify that on this day, I affixed the thumbprints of the defendant as appearing below on the Judgment in cause number CR 27181 rendered in the 385TH District Court of Midland County, Texas and witnessed the said Defendant affix his or her signature thereto.

SIGNED the _14_ DAY OF _April_, 20_03_.

_Ronald T. Bearden_
SIGNATURE OF WITNESS

_MCSO_
OFFICE OF WITNESS

I, the defendant in this cause, hereby certify that the thumbprints appearing below are my thumbprints affixed by me to the Judgment in cause number CR 27181 in the 385TH District Court of Midland County, Texas on the _14_ DAY OF _April_, 20_03_.

CLINTON LEE YOUNG
CAUSE NUMBER CR 27181
STATE ID. NUMBER: 5916214
BIRTH DATE: 7/19/1983

DEFENDANT'S LEFT
THUMBPRINT BELOW

DEFENDANT'S RIGHT
THUMBPRINT BELOW




to society, that the defendant, himself, actually caused the death of the deceased individuals or he did not himself actually cause the death of the deceased individuals, but he intended to kill the deceased individuals or anticipated that human life would be taken, and the jury having further answered after taking into consideration all of the evidence, including the circumstances of the offense, the defendant's character and background, and the personal moral culpability of the defendant, that there is **NOT** sufficient mitigating circumstance or circumstances that a sentence of life imprisonment rather than a death sentence be imposed, **IT IS THE ORDER OF THIS COURT** that the said Defendant, **CLINTON LEE YOUNG**, is hereby sentenced to **DEATH**, but the law further providing for an automatic appeal to the Court of Criminal Appeals of the State of Texas, the sentence of DEATH is suspended until the decision of the Court of Criminal Appeals has been received by this Court affirming the conviction and sentence of the Defendant.

The Defendant is remanded to the custody of the Sheriff of Midland County, Texas, to be transported to the Institutional Division of the Texas Department of Criminal Justice, there to await the action of the Court of Criminal Appeals and the further order of this Court.

Signed the 14th day of April, 2003.

APPEAL AUTOMATIC

JUDGE PRESIDING
385TH DISTRICT COURT
MIDLAND COUNTY, TEXAS

APR 10, 2003

JUDGE JOHN G. HYDE
238th DISTRICT COURT
BY

NO. CR 27,181

| | | |
|---|---|---|
| THE STATE OF TEXAS | * | IN THE DISTRICT COURT |
| | * | |
| V. | * | 385TH JUDICIAL DISTRICT |
| | * | |
| CLINTON LEE YOUNG | * | MIDLAND COUNTY, TEXAS |

## CHARGE ON PUNISHMENT

**Ladies and Gentlemen of the Jury:**

You have found the defendant guilty of the offense of capital murder. You are instructed that a sentence of either life or death is mandatory on conviction for capital murder. In order for the court to assess the proper punishment, certain questions or issues are submitted to you. Before answering these issues you will consider the following instructions:

**1.**

In arriving at the answers to the issues submitted, it will not be proper for you to arrive at your answers by lot, chance or any method other than by a full, fair and free exchange of the opinion of each individual juror. In answering the issues submitted to you, the jury must not be swayed by mere sentiment, conjecture, sympathy, passion, prejudice, public opinion or public feelings.

After you have answered the issue or issues in this charge, the presiding juror shall write the jury's answer or answers in

- 1 -

000858

the spaces provided and sign the verdict form.

**2.**

In deliberating on issues in this case except as provided in the following paragraph, the jury shall consider all evidence admitted at the guilt or innocence stage and the punishment stage, including evidence of the defendant's background or character or circumstances of the offense that militate for or mitigate against the imposition of the death penalty.

The Jury's answer or answers to the issues must be directly related to the defendant's personal culpability.   You are instructed in answering Issue No. 1 **and** Issue No. 2 that only the conduct of the defendant can be considered and that the instructions pertaining to the conduct of other persons under the law of parties heretofore given you on guilt/innocence cannot be considered in answering Issue No. 1 or in answering Issue No. 2.

The jury shall answer "yes" or "no" to any issue answered by the jury.

**3.**

Under the law applicable in this case, if the jury answers Issue No. 1 and Issue No. 2 "yes", and the jury answers Issue No. 3 "no," the law requires the Court to assess the punishment of the defendant at death.   If the jury answers Issue No. 1 or Issue No. 2 "no," the law requires the Court to assess the punishment of the defendant at life imprisonment.   If the jury answers issue No. 1 and Issue No. 2 "yes" and the jury answers Issue No. 3

000859

- 2 -

"yes," the law requires the Court to assess the punishment of the defendant at life imprisonment.

**4.**

You are instructed that in answering Issue No. 1 the State has the burden to prove beyond a reasonable doubt that the answer should be "yes."  The jury may not answer Issue No. 1 "yes" unless the jury agrees unanimously on the answer, AND the jury may not answer Issue No. 1 "no" unless ten or more jurors agree. The members of the jury need not agree on what particular evidence supports a negative answer.  If any juror has a reasonable doubt as to his or her answer to Issue No. 1, the juror shall vote "no" to that issue.

**5.**

ISSUE NO.1

Do you find from the evidence beyond a reasonable doubt that there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society?  Answer by stating, "yes," (there is a probability) or "no," (there is not a probability).  Answer by stating "yes" or "no."

Answer _Yes_ _James E Blo_ 4/10/03

**6.**

If you have answered "no" to Issue No. 1, do not answer

- 3 -

Issue No. 2.  Answer Issue No. 2 only if you have answered "yes" to issue No. 1.

You are instructed that in answering Issue No. 2 the State has the burden to prove beyond a reasonable doubt that the answer should be "yes."  The jury may not answer Issue No. 2 "yes" unless the jury agrees unanimously on the answer, AND the jury may not answer Issue No. 2 "no" unless ten or more jurors agree. The members of the jury need not agree on what particular evidence supports a negative answer.  If any juror has a reasonable doubt as to his or answer to Issue No. 2, the juror shall vote "no" to that issue.

7.

ISSUE NO. 2

Do you find from the evidence beyond a reasonable doubt that the defendant, himself, actually caused the death of the deceased individuals or he did not himself actually cause the death of the deceased individuals, but he intended to kill the deceased individuals or anticipated that human life would be taken? Answer by stating "yes" or "no."

Answer _YES  James E Bolo 4/10/03_

8.

Answer Issue No. 3 only if you have answered "yes" to Issue No. 1 and Issue No. 2.  In considering Issue No. 3, there is no burden of proof on either side.

You are instructed that in answering Issue No. 3, the jury

- 4 -

000861

shall answer the issue by stating "yes" (there is a sufficient mitigating circumstance or circumstances) or "no" (there is not a sufficient mitigating circumstance or circumstances). The jury may not. answer Issue No. 3. "no" unless the. jury agrees unanimously, AND the jury may not answer Issue No. 3 "yes" unless :en or more jurors agree.

The members of the jury need not agree on what particular evidence supports an affirmative finding on this issue. The jury shall consider mitigating evidence to be evidence that a juror night regard as reducing the defendant's moral blameworthiness or which would make a death sentence inappropriate in this case. In nswering Issue No. 3, you are further instructed that there is o presumption that a sentence of death or life imprisonment is ore appropriate. If the jury answers that a circumstance or ircumstances warrant that a sentence of life imprisonment rather han a death sentence be imposed, the court will sentence the efendant to imprisonment in the institutional division of the xas Department of Criminal Justice for life. If the jury finds at there is no sufficient mitigating circumstance or rcumstances to warrant a life sentence rather than a death ntence, the Court will sentence the Defendant to death.

9.

SUE NO. 3

Do you find from the evidence, taking into consideration all the evidence, including the circumstances of the offense, the

000862

circumstances of the defendant, his character and background, and the personal moral culpability of the defendant, that there is a sufficient mitigating circumstance or circumstances to warrant that a sentence of life imprisonment rather than a death sentence be imposed?  Answer by stating "yes" or "no."

Answer  _NO  James E Bobo 4/11/03_

### 10.

You are instructed that if there is testimony or evidence before you in this case introduced by the State regarding the Defendant having committed acts or participated in transactions other than the offense of capital murder of which you have found the defendant guilty, you are instructed that you cannot consider such other acts or transactions, if any, against the defendant in answering the special issues submitted to you unless you find beyond a reasonable doubt that the defendant committed such other acts or participated in such other transactions, if any, and if you do not so believe or if you have a reasonable doubt thereof, you shall not consider such testimony or evidence introduced by the State, if any, for any purpose against the defendant.

### 11.

Under the law applicable in this case, if the defendant is sentenced to imprisonment in the Institutional Division of the Texas Department of Criminal Justice for life, the defendant will become eligible for release on parole, but not until the actual time served by the defendant equals 40 years, without

000863

consideration of any good conduct time. It cannot accurately be predicted how the parole laws might be applied to this defendant if the defendant is sentenced to a term of imprisonment for life because the application of those laws will depend on decisions made by prison and parole authorities, but eligibility for parole does not guarantee that parole will be granted.

## 12.

In a criminal case the law permits a defendant to testify in his own behalf but he is not compelled to do so, and the same law provides that the fact that a defendant does not testify shall not be considered as a circumstance against the defendant. You will, therefore, not consider the fact that the defendant did not testify as a circumstance against the defendant; and you will not in your retirement to consider your verdict allude to, comment on, or in any manner refer to the fact that the defendant has not testified.

## 13.

As in the first phase of the trial, you have been provided with notebooks and permitted to take notes during the testimony. You are instructed that these notes are to assist you in recalling the testimony. However, these notes are not evidence and should not be used as such. If your memory or recollection of the evidence differs from the notes of a juror, you should rely on your memory. If the jury disagrees as to the testimony of any witness, they may, upon application to the Court, have

000864

read to them from the Court Reporter's notes that part of a witness' testimony on the particular part in dispute and no other.

### 14.

After the reading of this charge, you shall not be permitted to separate from each other, nor shall you talk with anyone not of your jury.  After argument of counsel, you will retire and consider your answers to the issues submitted to you.  It is the duty of your presiding juror to preside in the jury room, and to vote with you on the answer to each issue answered by the jury and to sign the verdict of the jury.

_____  4/10/03
JUDGE PRESIDING
385TH DISTRICT COURT
MIDLAND COUNTY, TEXAS


### VERDICT OF THE JURY

We, the jury, having answered the foregoing under the direction of the Court, return the same into Court as our verdict.


4/11/03                          James E Bolo
_____         _____
DATE                             PRESIDING JUROR

- 8 -

000865





# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

## AP-74,643

**CLINTON LEE YOUNG, Appellant**

v.

**THE STATE OF TEXAS**

### ON DIRECT APPEAL FROM CAUSE NUMBER CR-27181 IN THE 385TH DISTRICT COURT OF MIDLAND COUNTY

**Johnson,  J.,** *delivered the opinion of the Court in which* **Keller, P.J., Price, Womack, Keasler, Hervey, Holcomb,** *and* **Cochran, JJ.,** *joined.*  **Meyers, J.** *did not participate.*

## O P I N I O N

On April 14, 2003, a jury convicted appellant of capital murder.  TEX. PENAL CODE ANN. §

19.03.  Pursuant to the jury's answers to the special issues set forth in Texas Code of Criminal

Procedure Article 37.071, sections 2(b) and 2(e),[1] the trial judge sentenced appellant to death.  Art.

37.071 § 2(g).  Direct appeal to this Court is automatic.  Art. 37.071 § 2(h).  Appellant raises thirty-

four points of error.  We affirm.

---

[1]  Unless otherwise indicated, all references to articles refer to the Texas Code of Criminal Procedure.

## SUFFICIENCY OF THE EVIDENCE

In his eleventh and thirteenth points of error, appellant contends that the evidence is legally insufficient to support the jury's verdict of guilt on either of the theories under which he was indicted. In reviewing the legal sufficiency of the evidence, this Court looks at all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307 (1979).

The first paragraph of the indictment alleged that appellant intentionally and knowingly caused the deaths of Samuel Petrey and Doyle Douglas during different criminal transactions but pursuant to the same scheme and course of conduct. The second paragraph alleged that appellant intentionally and knowingly caused the death of Petrey during the course of committing the offenses of kidnapping and robbery. If the evidence is sufficient to support one of the theories in the indictment, we need not address the other theories. *Kitchens v. State*, 823 S.W.2d 256, 259 (Tex. Crim. App. 1991).

A person commits the offense of capital murder if he intentionally or knowingly causes the death of an individual while committing certain offenses, including kidnapping and robbery. TEX. PENAL CODE § 19.03(a)(2). A person commits the offense of kidnapping if he intentionally or knowingly abducts another person. TEX. PENAL CODE § 20.03. A person commits the offense of robbery if he unlawfully appropriates the property of another person with the intent to deprive the owner of the property and, with the intent to maintain control of the property, he intentionally or knowingly causes bodily injury to another or places another in fear of bodily injury or imminent death. TEX. PENAL CODE § 29.02.

Under the law of parties, as set out in the jury charge in this case, a person is criminally responsible for the conduct of another if:

> in the attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators, all conspirators are guilty of the felony actually committed, though having no intent to commit it, if the offense was committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of the carrying out of the conspiracy.

TEX. PENAL CODE § 7.02(b).

On November 24, 2001, appellant, Darnell McCoy, Mark Ray, and David Page decided to drive to Longview to buy some marijuana. Because none of them owned a car, appellant asked Douglas if he could borrow his car. Douglas refused, but offered to drive the group to Longview himself. When they arrived at their destination, appellant shot Douglas in the head with a .22 caliber semi-automatic handgun. Ray testified that appellant threatened the remainder of the group by saying, "If y'all don't get him in the trunk, you're going to be like him." Ray assumed that appellant meant that they would also be shot. Ray, McCoy, and Page put Douglas in the trunk.

The group then got back in the car and appellant drove off. Appellant later told Ray that he needed Douglas's car to go see his girlfriend. Appellant stopped the car in a remote wooded area near a creek and ordered Ray, Page, and McCoy to take Douglas's body out of the trunk. The men complied and dragged Douglas's body down to the creek while appellant smoked a cigarette. Page testified that appellant told Ray that he was going to have to prove himself by shooting Douglas in the head. Appellant got a pillow from the car and held it against Douglas's head which was face-down in the creek. Ray shot Douglas in the head once more.

Ray testified that appellant then drove to a gas station and told his companions that one of them had to go to Midland with him to see his girlfriend because "[i]f y'all squeal, you know, by the

4

time I hear about it, your friend's going to be dead." Page volunteered to go, and appellant took Ray and McCoy home. Appellant called his girlfriend, Amber Lynch, presumably to make arrangements to meet her, and learned that her father, Bart Lynch, was with her. Page testified that appellant realized that Bart would recognize Douglas's car because Douglas and Bart knew each other. Thus, appellant looked for another car to steal in Weatherford, but was unsuccessful.

The two then drove to Eastland and stopped at a Brookshire Brothers grocery store to get some gas. Petrey was walking back to his pick-up truck from the grocery store when appellant abducted him at gunpoint. Appellant ordered Petrey into his truck and then drove off with Page following in Douglas's car. Appellant later stopped at a rest area and telephoned Amber. Page testified that appellant decided that they would slit Petrey's throat and "leave him somewhere."

Appellant got back in the truck, and Page continued to follow in Douglas's car until they could find a location to abandon Douglas's car. Page testified that Petrey told appellant that he was familiar with the area and knew of a place to hide Douglas's car. According to Page, Petrey was compliant and helpful. Petrey directed them to another wooded remote area, and Page parked Douglas's car in some bushes. Appellant then fired several shots into the car in an attempt to "blow it up" but was unsuccessful.

Appellant, Page, and Petrey then drove toward Midland. They made several stops and eventually stopped at a Wal-Mart, where appellant ordered Petrey to buy a $500 assault rifle. Because of the waiting period, Petrey was not able to leave with the rifle. When they returned to the truck, appellant called Amber again. Bart got on the phone with appellant and told him that he knew what had happened to Douglas. Bart indicated that the police were looking for appellant and Page. He also indicated that Page's father knew about the situation and wanted Page to call him. Page then

called his father and, after speaking with him, told appellant that he needed to be dropped off so that he could turn himself in. Appellant refused and instead drove to a "pump-jack site," where he told Page that they needed to "get rid of all the evidence."

Page testified that Petrey was leaning up against his truck smoking a cigarette when appellant walked up to him and said, "Sorry, Sam, you know too much. You got to die." Appellant then shot Petrey twice. Some blood splashed on the bumper of Petrey's truck, so appellant ordered Page to clean it off. The two then left in Petrey's truck. After discussing what to do next, Page finally persuaded appellant to drop him off at an IHOP so he could turn himself in.[2]

Viewing all of the evidence in the light most favorable to the verdict, we find that a rational trier of fact could have found appellant guilty of the essential elements of capital murder beyond a reasonable doubt. *Jackson*, 443 U.S. 307. Appellant's eleventh and thirteenth points of error are overruled.

In his twelfth and fourteenth points of error, appellant claims that the evidence is factually insufficient to support the jury's verdict. Viewing the evidence without the prism of "in the light most favorable to the prosecution," we find that appellant has not shown that the evidence is so weak that the verdict is clearly wrong and manifestly unjust or that any contrary evidence is so strong that the standard of proof beyond a reasonable doubt could not have been met. *Zuniga v. State*, 144 S.W.3d 477 (Tex. Crim. App. 2004). Appellant's twelfth and fourteenth points of error are overruled.

In his seventeenth point of error, appellant challenges the legal sufficiency of the evidence

---

[2] According to Page, they stopped at a couple of gas stations to ask for directions to the police station, but were unable to find the station.

to support the jury's findings on the future dangerousness issue.  In reviewing the sufficiency of the evidence at punishment, this Court looks at the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have concluded beyond a reasonable doubt that appellant would probably commit criminal acts of violence that would constitute a continuing threat to society.  *Jackson*, 443 U.S. 307; *Allridge*, 850 S.W.2d 471.

In addition to the evidence offered at the guilt phase, the state's punishment evidence showed that on November 23, 2001, the day before the murders charged in this case, appellant burglarized a sporting goods store in Diana, Texas, and stole several guns, and that on November 20, 2001, appellant and several accomplices broke into the home of Carlos Torres Ramos with the intent to rob him.  Ramos was able to barricade himself in a closet where he had a .22-caliber rifle.  Appellant and his accomplices shot at Ramos through the closet door and, although Ramos was hit twice, he survived.  Ramos managed to get a shot off and wounded one of appellant's accomplices.  When the others retreated, appellant reloaded his gun and said, "Let's go back and kill the mother fucker."

Appellant's girlfriend, Amber Lynch, testified that on September 8, 2001, she was riding in a car with appellant when she learned from listening to a cell-phone call that appellant intended to commit a robbery of a Dairy Queen.  Appellant colluded with Barbara McCord, a Dairy Queen employee, to fake the robbery while McCord was depositing the nightly receipts.  The two did, in fact, commit the robbery.

The state also presented evidence that appellant committed assault and attempted to commit sexual assault while he was confined at the Waco Home for Youth.  Appellant and his roommate, Nathan Wendell, were wrestling when a necklace that appellant was wearing broke.  Appellant became so enraged that he began to punch, slap, and hit Wendell.  During the altercation, appellant

pulled his pants down and ordered Wendell to suck his penis.  Wendell refused, turned his head, and appellant's penis touched Wendell's ear.  Wendell testified that the confrontation lasted for approximately an hour.

Dr. Helen Short, a psychiatrist at the Waco Home for Youth, testified that appellant had nine instances of violence in the 100 days he lived at the home.  She testified further that he had been diagnosed with attention deficit disorder, a conduct disorder, and a disorder of written expression.  She considered him "very dangerous."

As a juvenile, appellant was adjudicated for two charges and committed to the Texas Youth Commission in July 1998.  He was released in February 2001.  In the commission of unauthorized use of a motor vehicle, appellant stole a neighbor's car and took the neighbor's children, who were eight and twelve years old.  He stole a gun from his mother and began driving to Louisiana with the children, but was quickly caught.  Appellant also served time for burglary of a building.  During the commission of that offense, appellant, his half-sister, and two friends stole alcohol, cigarettes, and candy from a store.

Viewing the evidence in the light most favorable to the verdict, a rational trier of fact could have concluded beyond a reasonable doubt that appellant would probably commit future criminal acts of violence that would constitute a continuing threat to society. *Jackson*, 443 U.S. 307; *Allridge*, 850 S.W.2d 471.  Appellant's seventeenth point of error is overruled.

In his eighteenth point of error, appellant challenges the factual sufficiency of the evidence to support the jury's findings on the future dangerousness issue.  We have repeatedly declined to conduct such a factual sufficiency review and decline to do so again today.  *Chamberlain v. State*, 998 S.W.2d 230, 233 (Tex. Crim. App. 1999).  Appellant's eighteenth point of error is overruled.

In his nineteenth and twentieth points of error appellant challenges the legal and factual sufficiency to support the jury's findings on the second, or anti-parties, punishment issue, which read,

> Do you find from the evidence beyond a reasonable doubt that the defendant, himself, actually caused the death of the deceased individuals or he did not himself actually cause the death of the deceased individuals, but he intended to kill the deceased individuals or anticipated human life would be taken?

In *Wardrip v. State*, 56 S.W.3d 588, 590 (Tex. Crim. App. 2001), we reiterated that this Court has repeatedly declined to conduct a factual sufficiency review of the future dangerousness special issue. We explained our rationale for this position as follows:

> In *McGinn* [*v. State*, 961 S.W.2d 161, 169 (Tex. Crim. App.), *cert. denied*, 525 U.S. 967 (1998)], we stated that "future dangerousness is, in essence, an issue of prediction," as opposed to "an issue of historical fact." [Footnote and citation omitted.] We explained: "Findings of historical fact are either right or wrong at the time of trial. But, predictions are not right or wrong at the time of trial – they may be shown as accurate or inaccurate only by subsequent events." [Citation omitted.] We held that a [factual sufficiency] review of the future dangerousness issue is impossible because it would require us to assign some evidence mitigating value and to substitute our judgment for that of the jury. [Citation omitted.] We concluded that the [legal sufficiency] standard should instead be used because it views the evidence in the light that supports the jury's verdict and asks only whether circumstances are present that a rational person somewhere could find a probability of future dangerousness beyond a reasonable doubt. [Citation omitted.]

*Wardrip*, 56 S.W.3d at 590.

However, we continued our analysis and said that the deliberateness issue, unlike future dangerousness, requires a finding of historical fact that is either right or wrong at the time of trial. *Id.* at 590-91; *see also* Art. 37.071(b)(1). Therefore, we distinguished it  from a determination of future dangerousness because it involves an assessment of events that have already occurred. *Id.* We concluded that, because a factual sufficiency review of deliberateness would not present the problems discussed in *McGinn*, then the deliberateness special issue could be reviewed for factual

sufficiency. *Id.* at 591.

Like the deliberateness issue, the anti-parties issue requires a finding of historical fact that is either right or wrong at the time of trial. Thus, we hold that this Court can conduct a legal and factual sufficiency review of this issue. *See id.*

The evidence showed that appellant personally shot both victims, formulated the plan to get a different vehicle, and repeatedly threatened his cohorts with severe consequences should they be inclined to tell anyone of their escapades. This evidence is both legally and factually sufficient to support the jury's finding that appellant, himself, actually caused the death of the victims and intended to kill them. Appellant's nineteenth and twentieth points of error are overruled.

In his twenty-first and twenty-second points of error, appellant challenges the legal and factual sufficiency of the evidence to support the jury's finding on the mitigation special issue. This Court does not review the sufficiency of the evidence to support the mitigation special issue. *McGinn v. State*, 961 S.W.2d 161, 166 (Tex. Crim. App. 1998). Appellant's twenty-first and twenty-second points of error are overruled.

## VOIR DIRE

In his sixteenth point of error, appellant contends that the trial court erred in granting the state's challenge for cause of prospective juror Danie Lynn Roberts. We review the trial court's ruling under an abuse of discretion standard and will not disturb the trial court's ruling if it is supported by the record. *Herron v. State*, 86 S.W.3d 621, 629 (Tex. Crim. App. 2002). "We examine the record as a whole to determine whether there is support for the trial court's ruling, deferring to the trial judge who was in a position to see and hear the venireperson." *Id.*

When asked about her feelings regarding the death penalty, Roberts initially stated that she

did not have anything against the death penalty, but was unsure as to whether she had the right to decide if someone should live or die. The prosecutor gave her several examples of cases in which the death penalty was assessed and asked her if she agreed that the defendants in those cases deserved the death penalty. In some instances she agreed; in others, she did not. She indicated that in some cases the death penalty was "okay," but was reluctant to "have that on [her] hands." When pressed further about rendering a death sentence, she stated, "I don't think I could do it." However, she later stated, "If I was on a jury that the facts really added up to where that person deserved to die, then I could probably [assess the death penalty]."

During voir dire by defense counsel, Roberts was again asked whether she could answer the questions in such a way that the death penalty would be assessed and she stated, "I really – couldn't tell you." She added, "Until that moment arrives, I couldn't say. I really couldn't." Finally, the trial judge asked Roberts the following:

> THE COURT:    Ms. Roberts, let me ask you did I understand you to say that you did not think you could envision any circumstance in which you could assess the death penalty or vote in such a way as the death penalty would be inflicted?

[ROBERTS]:  Not right now.

The state challenged Roberts for cause. When granting the state's challenge, the trial judge noted that Roberts initially vacillated in her responses, ultimately stating that she could not assess the death penalty. The trial judge noted on the record that he recognized her "hesitancy and demeanor" in evaluating her ability to serve on the jury. Because the record reflects that Roberts was a vacillating juror, the trial court did not abuse its discretion in granting the state's challenge for cause. *See Granados v. State*, 85 S.W.3d 217, 232-33 (Tex. Crim. App. 2002). Appellant's sixteenth point of error is overruled.

In his thirty-fourth point of error, appellant asserts that Article 35.16(b)(1) is unconstitutional because it establishes a challenge for cause when a potential juror expresses religious beliefs which would preclude her from considering the death penalty as a sentencing option.  He claims that potential juror Stephanie Hinojos was improperly excluded from serving on the jury pursuant to this statute.

Appellant's reasoning is flawed for two reasons.  First, Article 35.16(b)(1) does not mention religious beliefs.  Rather, it provides that the state may challenge for cause a potential juror who "has conscientious scruples in regard to the infliction of the punishment of death for a crime, in a capital case, where the State is seeking the death penalty."  Art. 35.16(b)(1).  Second, the record reflects that Hinojos was not struck because of her religious beliefs.  During voir dire, Hinojos stated that under no circumstances could she vote to give a defendant the death penalty.  At the conclusion of Hinojos's voir dire, the following occurred:

| | |
|---|---|
| THE COURT: | Okay.  What I think both sides are trying to find out, and I need to know as the Judge, that the third question, you see the jury answers yes or no to that according to the evidence, and we can't tell you what the evidence is now, can't even give you a sneak preview of it, but you understand that if the jury says yes to that third question, the Judge is going to assess a life sentence to the Defendant? |
| [HINOJOS]: | Uh-huh. |
| THE COURT: | If the jury says no, the Judge is going to give the death penalty to the Defendant. |
| [HINOJOS]: | Uh-huh. |
| THE COURT: | Is there any case where you could envision or consider voting no, knowing that the Judge would assess the death penalty in that case? |
| [HINOJOS]: | No, I couldn't. |
| THE COURT: | No matter what the facts are, you could not vote no? |

| [HINOJOS]: | As a person, I couldn't. |
| --- | --- |
| THE COURT: | Okay. |
| [HINOJOS]: | I couldn't live with that. |
| THE COURT: | All right.  Any other questions counsel? |
| [THE STATE]: | State has none. |
| [THE DEFENSE]: | Is any of that based upon your religion as a Catholic? |
| [HINOJOS]: | No, it's based on just my beliefs. |

Appellant's thirty-fourth point of error is overruled.

## SUPPLEMENTAL JURY INSTRUCTION

In points of error one through four, appellant challenges the trial court's submission of a supplementary instruction to the jury at the punishment phase of trial.  During their deliberations, the jurors sent a note to the trial judge asking whether, with regard to the anti-parties issue, they were required to find that appellant committed both murders in this case or only one.[3]  The trial court sent a written instruction to the jurors explaining that the first paragraph of the indictment alleged the murders of two victims pursuant to the same scheme or course of conduct, while the second paragraph alleged the murder of one victim committed during the course of committing kidnapping and robbery.  The trial court continued,

> If your consideration of Issue No. 2 on punishment is as to Paragraph 1 of the indictment, the death of two individuals is required to be found by the jury.  If your consideration is as to the second paragraph of the indictment, the death of an individual, Samuel Petrey, is required.

Appellant objected to this instruction on the grounds that it lessened the state's burden of

---

[3] The note said, "Do you have to believe both or at least one?"

proof, that it violated his Sixth Amendment right to a fair trial, that it violated his Fifth and Fourteenth Amendment rights to due process, and that it violated his Eighth Amendment rights because the jury was required to find appellant was responsible for the death of two individuals. On appeal, appellant claims that the instruction improperly coerced the jury to answer the second special issue in the affirmative, that the instruction allowed the jury to answer the second special issue in the affirmative without requiring all twelve jurors to answer "yes," that the instruction was an improper comment on the weight of the evidence, and that the instruction prevented the jury from "considering circumstances of the offense favorable to appellant that might have been considered mitigating evidence." Because appellant's objections at trial do not comport with the claims he now raises, he has failed to preserve those claims for appeal. TEX. R. APP. P. 33.1. Appellant's first, second, third, and fourth points of error are overruled.

## IMPROPER JURY CONTACT

In his fifth point of error, appellant claims that Sheriff Gary Painter improperly communicated and fraternized with the jury during its deliberations on punishment. Specifically, he claims that, during a break in the proceedings, presiding juror James Bobo approached Painter, who was an acquaintance, and asked to speak with him after the trial was over. He claims further that, during a lunch break, the sheriff accompanied the jury to a local restaurant and that his presence improperly influenced the jury to set appellant's punishment at death.

When a juror converses with an unauthorized person about the case, injury is presumed. *Alba v. State*, 905 S.W.2d 581, 587 (Tex. Crim. App. 1995). However, the state may show that the case was not discussed or it may rebut the presumption of harm by showing that nothing prejudicial to the accused was said. *Id.* We defer to the trial court's resolution of historical facts and its

determinations concerning credibility and demeanor, and we view the evidence in the light most favorable to the trial court's ruling. *Quinn v. State*, 958 S.W.2d 395, 401-02 (Tex. Crim. App. 1997).

At the hearing on appellant's motion for new trial, Painter testified that when Bobo approached him, he said "When this is over and through with, I need to talk to you." Bobo did not indicate what he needed to talk to him about, and there was no further discussion between the two. Without more, appellant has failed to show that his case was discussed or that anything prejudicial to appellant was said.[4] *Alba*, 905 S.W.2d at 587. Appellant's bare allegation that Painter was present at lunch does not warrant relief on appeal. TEX. R. APP. P. 38.1. Appellant's fifth point of error is overruled.

## MITIGATION

In his eighth point of error, appellant argues that the jury "had no vehicle to consider and give effect to petitioner's ADHD and other mitigating evidence." The jury in this case was given the statutory mitigation instruction. *See* Art. 37.071 § 2(e)(1). The statutory instruction allows the jury to consider all of the evidence presented at trial in answering the mitigation special issue. *Cantu v. State*, 939 S.W.2d 627, 639-40 (Tex. Crim. App. 1996)). Appellant presented evidence of his ADHD and other mitigating evidence, and the jury was given a vehicle through which it could consider and give effect to that evidence. Appellant's eighth point of error is overruled.

## GEESA INSTRUCTION

---

[4] At the motion for new trial hearing, Painter testified that he accompanied the jurors to lunch because additional security was needed. Earlier in the week, a threat had been phoned into the Midland County Attorney's Office indicating that appellant was "going out with a bang." Painter, as head of courthouse security, thought it prudent to accompany the jurors because of the attention this case received.

In his twenty-third, twenty-fourth, and twenty-fifth points of error, appellant contends that the trial court erred in denying his request to include the *Geesa*[5] definition of reasonable doubt in the charge on punishment. In *Paulson v. State*, 28 S.W.3d 570 (Tex. Crim. App. 2000), issued almost three years before the trial in this case, we overruled that portion of *Geesa* which required a definition of "beyond a reasonable doubt" to be included in the court's charge. In fact, we stated "that the better practice is to give no definition of reasonable doubt at all to the jury." *Id.* at 573. Appellant's twenty-third, twenty-fourth, and twenty-fifth points of error are overruled.

## EXECUTION OF MINORS

In his thirty-third point of error, appellant alleges that the Texas death-penalty scheme is unconstitutional because it permits the execution of offenders aged eighteen to twenty-one. He argues that the brain does not fully develop until the age of twenty-one, and therefore, offenders aged eighteen to twenty-one are less culpable than offenders twenty-two years of age and older. Appellant cites *Roper v. Simmons*, 125 S.Ct. 1183 (2005), as evidence that evolving standards of decency require this Court to raise the age of offenders eligible for the death penalty. However, in *Roper v. Simmons*, the United States Supreme Court held that the execution of offenders who were seventeen years of age at the time they committed capital murder is unconstitutional. The Supreme Court did not extend its ruling to offenders who were aged eighteen or over when they committed capital murder, and we decline to do so. Appellant's thirty-third point of error is overruled.

## PREVIOUSLY REJECTED CLAIMS

In his sixth and seventh points of error, appellant argues that the Texas death-penalty scheme is unconstitutional because it allows prosecutorial discretion in deciding when to seek the death

---

[5] *See Geesa v. State*, 820 S.W.2d 154 (Tex. Crim. App. 1991).

penalty. We have previously rejected this claim. *Ladd v. State*, 3 S.W.3d 547, 574 (Tex. Crim. App. 1999); *McFarland v. State*, 928 S.W.2d 482, 510 (Tex. Crim. App. 1996). Appellant's sixth and seventh points of error are overruled.

In his ninth point of error, appellant claims that the trial court erred in failing to quash the indictment because it failed to allege the special issues. In his tenth point of error, he argues that the trial court erred in failing to instruct the jury that it could consider only facts alleged in the indictment in answering the mitigation special issue. In his thirtieth point of error, he asserts that Article 37.071 is unconstitutional because it places the burden of proof on the defendant to show mitigating circumstances which would warrant a life sentence. We have previously rejected these claims. *Rayford v. State*, 125 S.W.3d 521, 533-34 (Tex. Crim. App. 2003), *cert. denied*, 125 S.Ct. 39 (2004). Appellant's ninth, tenth, and thirtieth points of error are overruled.

In his fifteenth point of error, appellant claims that Texas Penal Code § 19.03(a)(2) is unconstitutional because it fails to narrow the class of offenses for which the death penalty may be sought. He argues that kidnapping should not be included in this section because "[v]irtually every murder involves some restraint of the victim's movements and every murder by definition involves using deadly force." We have previously rejected this claim. *Rayford*, 125 S.W.3d at 524-25. Appellant's fifteenth point of error is overruled.

In his twenty-sixth and twenty-seventh points of error, appellant asserts that the trial court erred in failing to define the terms "probability," "criminal acts of violence," "continuing threat to society," and "more likely than not" in the jury charge. We have previously rejected these claims. *Chamberlain v. State*, 998 S.W.2d 230, 237-38 (Tex. Crim. App. 1999). Appellant's twenty-sixth and twenty-seventh points of error are overruled.

In his twenty-eighth point of error, appellant argues that the trial court erred in failing to instruct the jury that the state was required to prove beyond a reasonable doubt that there were insufficient mitigating circumstances to warrant a life sentence. In his twenty-ninth point of error, appellant contends that Article 37.071 is unconstitutional because it prohibits the trial court from instructing the jurors regarding the consequences of their failure to agree on the special issues. In his thirty-first point of error, he claims that the "12-10" rule of Article 37.071 violates the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution. We have previously rejected these claims. *Resendiz v. State*, 112 S.W.3d 541, 548-50 (Tex. Crim. App. 2003), *cert. denied*, 541 U.S. 1032 (2004). Appellant's twenty-eighth, twenty-ninth, and thirty-first points of error are overruled.

In his thirty-second point of error, appellant claims that the trial court erred in sustaining the state's objection to appellant's attempt to impeach Page with the results of a polygraph examination. "It has long been the rule in this State that the results of a polygraph test are inadmissible *for all purposes*." *Nethery v. State*, 692 S.W.2d 686, 700 (Tex. Crim. App. 1985)(emphasis in original). The trial court's ruling sustaining the state's objection and excluding the results of the polygraph was proper. Appellant's thirty-second point of error is overruled.

We affirm the judgment of the trial court.


Johnson, J.


Delivered: September 28, 2005
En banc
Do not publish

# Supreme Court of the United States
## Office of the Clerk
## Washington, DC  20543-0001

**William K. Suter**
Clerk of the Court
(202) 479-3011

April 3, 2006

Mr. J.K. Rusty Wall
P.O. Box 50123
Midland, TX  79710-0123

   Re: Clinton Lee Young
      v. Texas
     No. 05-8330

Dear Mr. Wall:

 The Court today entered the following order in the above-entitled case:

 The petition for a writ of certiorari is denied.

      Sincerely,

      *William K. Suter*

     William K. Suter, Clerk

# IN THE COURT OF CRIMINAL APPEALS

# OF TEXAS

........................................................

### NOS. WR-65,137-01 and WR-65,137-02

........................................................

### EX PARTE CLINTON LEE YOUNG

........................................................

## ON APPLICATIONS FOR WRITS OF HABEAS CORPUS

## IN CAUSE NO. 27,181 IN THE 385TH DISTRICT COURT

## MIDLAND COUNTY

........................................................

*Per curiam.*

## ORDER

These are post conviction applications for writs of habeas corpus filed pursuant to the provisions of Texas Code of Criminal Procedure article 11.071.

On March 27, 2003, a jury convicted applicant of the offense of capital murder. The jury also answered the special issues submitted pursuant to Article 37.071 of the Texas Code of Criminal Procedure in the favor of the State. The trial court, accordingly, set punishment at death on April 14, 2003. This Court subsequently affirmed applicant's conviction and sentence on direct appeal in an unpublished opinion. *Young v. State*, No. 74,643 (Tex. Crim. App. Sept. 28, 2005).

In his initial writ application, applicant presents fourteen allegations in which he challenges the validity of his conviction and the resulting sentence. A hearing was held, and the trial judge entered findings of fact and conclusions of law recommending that relief be denied.

This Court has reviewed the record with respect to the allegations made by applicant. We agree with the trial court's recommendation and adopt the trial judge's findings and conclusions. Based upon these findings and conclusions and our own review of the record, relief is denied.

Case 7:07-cv-00002-RAJ   Document 18-3   Filed 12/20/07   Page 36 of 36

This Court has also reviewed applicant's additional claims numbered fifteen to twenty-two, an unnumbered claim related to "any matter raised by the voir dire transcripts," and a document entitled "Applicant's Pro se Complaints." All of these claims were filed after the deadline provided for filing an initial application for a writ of habeas corpus but were forwarded to this Court with the initial writ application. We have considered all of these additional claims and find that they constitute, *in toto*, a subsequent writ application. *See* Tex. Code Crim. Proc. art. 11.071 § 5. We further find that the claims in the subsequent application fail to meet one of the exceptions provided for in Section 5 of Article 11.071, and thus, we dismiss the subsequent application as an abuse of the writ.

IT IS SO ORDERED THIS THE 20TH DAY OF DECEMBER, 2006.

Do Not Publish