```
 1              IN THE UNITED STATES DISTRICT COURT
             FOR THE WESTERN DISTRICT OF TEXAS
 2                  MIDLAND-ODESSA DIVISION

 3   CLINTON LEE YOUNG          )   MO-O7-CV-OOOO2
                                )
 4   VS.                        )   HEARING BEFORE THE COURT
                                )
 5   NATHANIEL A. QUARTERMAN    )   January 24, 2008
                                )
 6

 7          -----------------------------------

 8          BEFORE THE HONORABLE ROBERT JUNELL

 9             UNITED STATES DISTRICT JUDGE

10                 In Midland, Texas

11          -----------------------------------

12
     FOR THE GOVERNMENT:    MR. STEPHEN HOFFMAN
13                          Assistant United States Attorney
                            300 West 15th Street, #2
14                          Austin, Texas  78701
                            (512) 475-4413
15

16   FOR THE PETITIONER:    MR. J.K. "RUSTY" WALL
                            Law Office of J.K. Wall
17                          2500 Big Spring, Suite 125
                            Midland, Texas  79705
18                          (432) 682-1522

19                          MR. ORI T. WHITE
                            Attorney at Law
20                          P O Box 160
                            Ft. Stockton, Texas  79735
21                          (432) 336-7562

22
     COURT REPORTER:        MS. JANE McGILL
23                          Permian Court Reporters
                            605 West Texas
24                          Midland, Texas  79701
                            (432) 683-3032
25
```

Permian Court Reporters, Inc.
Midland-Odessa, Texas   (432) 683-3032

1          THE COURT:   All right.   Would the clerk
2    call the case, please?
3          THE CLERK:   Court calls MO-07-CV-00002,
4    Clinton Lee Young versus Nathanial A. Quarterman.
00:00   5          THE COURT:   Who is here for the State of
6    Texas?
7          MR. HOFFMAN:   Stephen Hoffman for the
8    respondent.
9          THE COURT:   All right.   And who is here
00:00  10   for Mr. Quarterman?
11         MR. WALL:   J.K. Wall.
12         THE COURT:   I'm sorry, not for Quarterman.
13   For Mr. Young.   Who is here for Mr. Young?
14         MR. WALL:   Rusty Wall.
00:00  15         MR. WHITE:   J.K. Wall and Mr. Ori T.
16   White.
17         THE COURT:   All right.   Mr. Young, would
18   you stand up for just a second, please?   Are you
19   Mr. Young?   Are you Mr. Clinton Lee Young?
00:00  20         THE DEFENDANT:   Yes, sir.
21         THE COURT:   All right.   And I received a
22   letter from you and that's the reason we're having this
23   hearing is that on November 20th, 2007, that's the date
24   that your letter was dated, and I'm sure I got it within
00:00  25   a reasonable time after it was sent, and I sent a copy

1  to Mr. Wall and Mr. White, and I sent a copy also to

2  Mr. Hoffman and the State of Texas.

3  And you said you are writing me as

4  concerns associated with your appeal and lawyers in this

00:01  5  case.  This is Mr. White, Mr. Wall.  You have tried

6  numerous times to get these lawyers to pull and

7  investigate all your claims.  There are -- I'm going to

8  clean your grammar up just a little bit.

9  There are numerous people that have not

00:01  10  been spoken to concerning your TYC records and other

11  portions of your case.  In addition to this, there are

12  portions of your case that have never been investigated,

13  which you have also tried to get your lawyers to look

14  into, as once done will provide evidence it is critical

00:01  15  to help prove you did not commit capital murder.  They

16  have failed to exhaust all means available to them.

17  This is only harming -- and you said this is only

18  harming me.

19  While I speak on this matter to my

00:01  20  lawyers, JK Rusty Wall said, oh, there is sloppy police

21  work every day in America.  Your Honor, my case has not

22  even been fully investigated yet.  I do not want to go

23  into much detail, but there is part of my case that has

24  not been looked into by the police.  Once looked into it

00:02  25  is evidence critical to show that the co-defendants lied

and I was wrongfully convicted.  As a result of my
lawyer's failure to properly communicate with me, I have
looked into getting additional lawyers on the case.  I
have part in other words with the law firm of --
00:02  pronounce that first word.

          THE DEFENDANT:  I think it was Debevoise.

          THE COURT:  D-E-B-E-V-O-I-S-E is how you
spell it, in Plimpton has agreed to look into my case
pro bono, so I'm writing this Court to ask that the
00:02  Court instruct Ori T. White and J.K. Rusty Wall not to
file my supplemental writ or innocence claims.  That I
have failed to attempt to properly research my claims.
I as well as -- I as well have other inmates that Lisa
Milstein, M-I-L-S-T-E-I-N, had worked on their case.  I
00:03  have informed my lawyers of this, yet they have failed
to look into this matter.

          Lisa Milstein has filed false affidavits
in their cause.  One inmate, who has since been
executed, was willing to give an affidavit that Lisa
00:03  Milstein has stole $3,000 from him and his mother.

          Other inmates have filed Lisa Milstein's
been high on crack cocaine and filing false affidavits
in their case.  So it is widely known that she was
mentally unstable and a drug user.  All the inmates have
00:03  agreed to give affidavits and make available the

1   documents that prove their claims to be true.  Who is

2   Lisa Milstein?  I don't know who she is.

3                   THE DEFENDANT:  She was the investigator

4   on my State Writ of Habeas Corpus.  And if I could

00:03   5   expound real quick is that she had smoked crack with my

6   brother, who was a witness in the case and filed all

7   affidavits, basically false lies.  She just fabricated

8   them and had people sign them and she changed them up.

9   And the reason why I mentioned her is because Gary

00:03   10  Taylor in an affidavit to the Court said that he had no

11  knowledge of Lisa ever conducting a -- Ms. Milstein ever

12  conducting an investigation like that.

13                  And that's false because a client whose

14  case he had a year before mine, his parents -- she filed

00:04   15  false affidavits in that case saying his family said

16  things that they didn't say.  And he also -- she came to

17  see him high and he canceled a visit and wrote Gary and

18  told him, the chick was on crack when she came to see

19  me.

00:04   20                  THE COURT:  Okay.

21                  THE DEFENDANT:  So he already -- he knew

22  well, two or three years before that, he signed that

23  deposition or declaration on my case saying that he

24  didn't know that she had done that before.  He knew very

00:04   25  well that she had done that stuff before.

1          THE COURT:  Is she working on the habeas

2     before this Court?

3          THE DEFENDANT:  No, she worked on my State

4     habeas.

00:04    5          THE COURT: Okay.  All right.  You went on

6     and said -- I'm not reading this verbatim, but I'm kind

7     of skipping from place to place.

8               So I feel that since none of this has been

9     looked into, as well as additional other critical

00:04   10    matters in my case that the lawyer file my innocent

11    claims or supplemental writ would do me more harm.  I

12    have contacted a lawyer with the ACLU about helping me

13    to file a lawsuit on the lawyers R.T. White and

14    J.K. Rusty Wall, if they file the supplemental writ or

00:05   15    innocent claim in my case without properly investigating

16    my case and claims, as well as without my permission or

17    approval.

18               I understand at this time these lawyers

19    are still on my case, so will have to go forward with

00:05   20    filing the Federal writ in this case.  I do not at this

21    time know which lawyers from the Debevoise and Plimpton

22    will be on my case.  They are attempting to get a legal

23    phone call or visit set up to finalize matters.  I'm

24    sure they will contact this Court.  I, as well, oppose

00:05   25    J.K. Rusty Wall filing anything on my case or being any

1    way a part of my appeal.  R.T. White should remain as

2    the head lawyer on my appeal.  I understand J.K. Rusty

3    Wall was put in place by this Court and this would be

4    the one to file my Federal writ as long as he is on my

00:05  5    case.  I am stating my objection to him period, so that

6    the Court may note it when he does not properly file my

7    claims.

8              I thank you for your time and attention to

9    this matter.  I leave as I came, Respectfully, Clint

00:05  10   Young.

11             Now, what do you want me to do?  What is

12   it you are asking the Court to do?

13             THE DEFENDANT:  Well, the problem, Your

14   Honor, I will speak on Debevoise first.  The Debevoise,

00:06  15   they thought that was still in State Court, Debevoise

16   and Plimpton law firm.  And their thing was they need at

17   least a year to file the appeal and they wasn't

18   contacted until about a month before that, that paper I

19   filed that paper with you.

00:06  20             But my whole problem is, there's a lot of

21   parts of my case that ain't been properly investigated.

22   The ballistics of my case, I have not had one ballistic

23   report come back on the first murder saying I couldn't

24   done it.  I am trying to get ballistics of the second

00:06  25   murder.  I will say it'll easily show I didn't do that.

1        THE COURT:  What do you want me to do?

2        THE DEFENDANT:  I mean, I'm not a lawyer,

3   I mean --

4        THE COURT:  I understand that.  Do you

5   want new counsel besides Mr. Wall and Mr. White?

6        THE DEFENDANT:  Well, that's what I want,

7   because I can't seem to get them to do what I need to

8   get done.  That's the whole thing.  Ever since I know --

9   I know in part be fair to them that Gary Taylor pretty

10  much really limited you know what they could do in

11  Federal Court because Lisa Milstein's actions on my

12  State writ.  But I was wanting to get different counsel

13  because I can't seem to get the counsel I have now to do

14  what I need to do.  I mean, excuse me, do what I need to

15  get done.

16       THE COURT:  Are you asking the Court,

17  then, to appoint different counsel than Mr. Wall and

18  Mr. White?

19       THE DEFENDANT:  Sir, something or to some

20  state form or fashion get them to look into the claims

21  that I made.  Because everything I say, I can -- all my

22  pro se claims that I filed with the Court for my TYC

23  records and everything, I filed one of my pro se claims

24  was on Jaclyn Timmons, TYC guard, stated I hit her.  She

25  said under oath that the summary of the incident report

1  that's contained in TYC records is just a summary.  So

2  it doesn't say that I hit her, but in her actual report

3  she said she wrote that I hit her.  I got her actual

4  report.  It don't say nowhere that I hit her.  She

00:08  5  committed perjury against me because I had a lot of

6  problems in TYC.

7            That's another example.  They had this,

8  the D.A.'s office, they got the report because I got the

9  report from the D.A.'s file when I got a copy of their

00:08  10  file.

11            THE COURT:  Today we are not deciding all

12  of these issues.

13            THE DEFENDANT:  Oh, I mean, that's an

14  example.  All this stuff I have been trying to put

00:08  15  before them and get filed and get done, I can't get

16  done.  And these lawyers seem to not want to do it for

17  whatever reason, I don't know.

18            THE COURT:  Okay.  Why don't you have a

19  seat and let me ask Mr. Wall and Mr. White, do you -- do

00:08  20  you suggest that the Court appoint different counsel in

21  this case?  Is there a conflict now between you and your

22  client, Mr. Wall?

23            MR. WALL:  Well, Your Honor, relations you

24  can tell are not the best.  We try our very best.  I

00:08  25  think Mr. Young is under the impression that he has

hybrid counsel.  And unfortunately, in my judgment, he
does not.  We certainly are willing to try to work for
him to save his life.  We have, so far, met all the
Court's deadlines and intend to meet the other
requirements of the order of appointment and, indeed,
beyond if we are required to go beyond, Your Honor.

We have not asked to be relieved, but if
the Court were concerned that there is some tension and
some difficulty and some disagreement between ourselves
and Mr. Young, that is true, Your Honor.  I respectfully
submit to the Court that whomever is counsel might be
there would be some difference of opinion because,
again, Mr. Young's view of our representation and who
has to make the hard decisions in this is very different
than what we think the realities are.

THE COURT:  Well, when I get a letter from
somebody saying that they are contacting someone to sue
you, that indicates there's some issues there.
Mr. White, would you like to address this at all?

MR. WHITE:  Yes, Your Honor.  One of the
problems in the -- in this case was that -- and this
goes back to Lisa Milstein.  Lisa Milstein found what
Gary Taylor believed to be a very good, clear, lucid
Wiggins claim that possibly could have granted relief to
our client, Clinton Young.  And almost -- well, the

1   majority of the focus of this State writ was along those

2   lines of the Wiggins claim, which would have given him

3   possibly a new trial of punishment.

4   After that was filed, that 1107.1 bar hit

00:10   5   and it precludes a bunch of additional claims being

6   added without it possibly having to go through all those

7   hoops to see was the evidence available and all the

8   items included in 1107.1.  What we've done and what -- I

9   appreciate Clinton, he was very good about corresponding

00:10   10   with Judge Hyde as well, and all of those unadjudicated

11   claims, Rusty and I put in the Federal writ, since it's

12   apparent that he does want to have -- file a subsequent

13   writ and what the Court could do and we are assuming

14   that some other lawyer is going to come and do the

00:11   15   supplemental writ, and to try to address those

16   unadjudicated claims.

17   I think Mr. Wall and I were -- we went

18   down in October to the death row and visited with him

19   and we discussed the items that we were going to raise

00:11   20   in the Federal writ.  And our purpose in placing these

21   unadjudicated claims in this writ was so that if

22   subsequent counsel wanted to bring them up, they would

23   have that opportunity and not be totally gone.

24   THE COURT:  Mr. White, did you and

00:11   25   Mr. Wall have a chance to visit with Mr. Young today at

1 all?  Have y'all had a chance to visit?

2     MR. WHITE:  We did not today, Your Honor.

3     THE COURT:  All right.  Would Mr. Young,

4 would you like an opportunity here for a few minutes to

00:12 5 visit with Mr. Wall and Mr. White at all while we're

6 here, just take a break here for a second?

7     THE DEFENDANT:  That's all right.  That's

8 all right.  I mean, it's not personal, but I guess you

9 would say it's a client/attorney problem, right?

00:12 10     THE COURT:  Okay.  Well, it's a very

11 important -- I mean, it is.

12     THE DEFENDANT:  That's the thing, Your

13 Honor --

14     THE COURT:  Stand up when you talk to me.

00:12 15 Stand up.

16     THE DEFENDANT:  The thing is, maybe it's

17 this.  I just can't fully grasp the ADPA standards or

18 something.  I don't know.  I read them several times,

19 but -- and all the Court rulings that come out.  But my

00:12 20 thing is that none of the ballistics, that's what our

21 main argument was over was the forensics in the case.

22 All I had was the dude who was the codefendant done the

23 crime sat at my trial and say I'm the one that done it.

24 But the gloves that he had on, I tried to get the gloves

00:12 25 tested that shows he lied about the gloves.  I show that

00:13

1  the ballistics of it how far away.  He said I was ten

2  feet away.  The victim was shot within six inches.  All

3  the forensics show I couldn't have done it and I haven't

4  been able to get the ballistics test.  I can't pay for

5  it as indigent, but I have friends that say they would

6  pay for it and that's really what the main conflict is.

7  I can't get none of the stuff that help show that I

8  ain't the one that done the crime.

9          THE COURT:  As I recall Mr. Cantacuzene,

10  did he represent you on --

11          THE DEFENDANT:  Ian Cantacuzene and Paul

12  Williams.

13          THE COURT:  Mr. White, where are we on

14  this issue?  I think the decision I need to make today

15  is whether I can continue you and Mr. Wall on the case

16  or do I appoint counsel?  What's your -- what do you

17  think?  What do you -- you think that --

18          MR. WHITE:  Judge, I think you should do

19  whatever Clinton wants you to do, Judge.  He is facing

20  the death penalty.  If he is uncomfortable with counsel,

21  if he wants to keep us, we are -- Rusty and I are happy

22  to serve.  There is a history of challenging

23  communications between Clinton and some of his other

24  lawyers as well.

25          We understand that he's facing the death

1  penalty, Your Honor.  And we will serve if it please the

2  Court, but if you feel otherwise, Judge, you're not

3  going to hurt our feelings.  It's just up to you, Judge.

4          A big question in our mind was -- and we

00:14  5  did not think that those unadjudicated claims on the

6  ballistics and those items of -- it would require the

7  filing of the subsequent writ, Judge.  And he does have

8  what I believe to be legitimate complaints that should

9  have been raised by Gary Taylor in the original writ.

00:14  10  And I'm not faulting Gary Taylor.  I think he was so

11  excited about this Wiggins claim that that was his main

12  focus, Judge.

13          THE COURT:  Okay.  What does the State of

14  Texas think?

00:15  15          MR. HOFFMAN:  Well, Your Honor, as a

16  matter of policy, my office doesn't get involved in

17  disputes between petitioners and their attorneys.

18  Mr. Wall and Mr. White seem like competent attorneys to

19  me, but if the Court feels it necessary to provide new

00:15  20  counsel because of the breakdown in communication, we

21  would have no objection to that.

22          However, I would note that the statute of

23  limitations period has already passed, which means that

24  Mr. Young is pretty much stuck with the claims that his

00:15  25  attorneys raised in this petition, and even if he does

1  get new counsel, he won't be able to raise new claims at

2  this juncture.

3              THE COURT:  Well, he can -- you know, he

4  can raise them and a question as to whether or not

00:15  5  they're allowed by the Court or not is -- you are

6  correct that there is an issue there.

7              Mr. Young, do you have any thoughts about

8  who might be -- who might be counsel that -- because I

9  haven't -- I'm not familiar with everyone that's -- This

00:16  10  is specialized work that does this work.  Do you have

11  any suggestions?

12              THE DEFENDANT:  Locally, no, because after

13  the CCA -- CCA came out with some new guidelines because

14  of the writ attorneys that knocked away a bunch of the

00:16  15  writ attorneys.  I don't know who the attorneys listed

16  are.  But you said -- asked me a minute ago if I could

17  have a couple of minutes to talk to them.

18              THE COURT:  If you would like a chance.

19              THE DEFENDANT:  Yes, sir, I would like a

00:16  20  chance.

21              THE COURT:  Let's take a recess just a

22  second.  Y'all visit right there at the desk.  I'm not

23  going to require you -- everyone take your seats.  And

24  Mr. Wall and Mr. White, y'all visit with Mr. Young.  And

00:17  25  I want to thank the correctional officers from TDCJ very

1    much for getting Mr. Young up here.  I know it's a long

2    haul and I don't call these hearing on frivolous

3    matters, so I appreciate you guys bringing Mr. Young up

4    here.

00:17  5              Everybody keep your seats and y'all can

6    visit and we will take a quick recess.  And let me know

7    when you are done.

8              (Break taken from 3:49 p.m. to 4:20 p.m.)

9              THE COURT:  It's 4:20 and we're back in

00:47  10   the courtroom and Mr. Hoffman is here, Mr. Wall,

11   Mr. White, Mr. Young, we're all present.  Y'all visit

12   with one another?  What do you want to do, Mr. White?

13              MR. WHITE:  We did, Your Honor.  Our

14   client would like the -- whichever lawyer represented

00:47  15   Randy Halprin and Gregory Wright.  And you want to stand

16   up and tell the Judge that?

17              THE DEFENDANT:  All right.  I had the -- I

18   thought I had it with me, but I left it in my cell

19   because I wasn't really -- they didn't tell me until the

00:47  20   last minute I was coming up here, on the other lawyers

21   just in case the situation came up.  I guess I have to

22   ask the Court if they would let me write them.

23              THE COURT:  Do you know where the lawyer

24   is from?

00:47  25              THE DEFENDANT:  Dallas, Texas.  They

1  represented Randy Halprin, one of the Texas 7 and they

2  represented Gregory Wright.   Barry Wright's case came

3  out of the Supreme Court.   So --

4  THE COURT:   I have a list of all of the

00:47  5  lawyers that have been approved --

6  THE DEFENDANT:   I can't --

7  THE COURT:   11.017 appointments and

8  there's not a Dallas lawyer on here.   This is not --

9  how -- Mr. White, you or Mr. Wall, both of y'all are on

00:48  10  the list, about how many lawyers are qualified?   Would

11  it be about 20 or 25 or 30 lawyers statewide?   Does that

12  sound about right?

13  MR. WHITE:   About 55, Judge, I believe.

14  THE COURT:   I may not have a full list,

00:48  15  then.

16  THE DEFENDANT:   I know these lawyers

17  because they just got a -- like I say, they represent

18  Randy Halprin in the State or -- or State writ

19  proceedings.   They represented Gregory Wright in his

00:48  20  Federal proceedings as well in the Fifth Circuit and

21  before the Supreme Court.   I just didn't have the --

22  MR. WHITE:   Judge, I believe that

23  Mr. Hoffman could probably call his office and find out

24  which law firm, the lawyer that has represented Randy

00:49  25  Halprin or Gregory Wright.   Didn't you reckon you could

1   do that?

2                   MR. HOFFMAN:  I could, possibly.

3                   THE COURT:  Why don't we just -- that's

4   all right.  We could -- what's the correctional

00:49   5   officers, what's your plan for Mr. Young as far as --

6   when will y'all be going back?

7                   CORRECTIONAL OFFICER:  At the Court's

8   discretion.  We are here until this is finished.

9                   THE COURT:  Well, I'm just trying to get

00:49   10  an idea, it's probably late in the day today.  I don't

11  know if y'all are going to spend the night tonight and

12  then to back tomorrow.

13                  CORRECTIONAL OFFICER:  We are.

14                  THE COURT:  Why don't you get me the name,

00:49   15  Mr. Young, and I have been getting correspondence from

16  you, so I expect I'm getting it on a regular basis.

17                  THE DEFENDANT:  They only let me bring a

18  basic bare minimum of property with me from death row to

19  Midland County jail.

00:49   20                  THE COURT:  Okay.

21                  THE DEFENDANT:  I'm just a holdover on the

22  Midland County jail so the property that has the names

23  in it is back on the Polunsky unit.

24                  THE COURT:  But they are going to take you

00:49   25  back to Polunsky.

1        THE DEFENDANT:  Yeah I could write Monday.

2        THE COURT:  Yeah, just write me next week.

3    I mean, I don't think there is anything that's happening

4    between now and a week to ten days, is there,

00:50    5    Mr. Hoffman?

6        MR. HOFFMAN:  No, sir, my response isn't

7    due for another month.

8        THE COURT:  I will give you 14 days to --

9        THE DEFENDANT:  Sure.

00:50    10        THE COURT:  -- get me those names and I

11    will check them out and I may end up calling them and

12    seeing if they are willing to or have Ms. Marroquin, my

13    clerk, call them and see if they are willing to take the

14    appointment.

00:50    15        And I want you to know, this in no way

16    reflects upon the professionalism of Mr. Wall and

17    Mr. White.  I -- they are fine lawyers and they have

18    dealt -- have been in my court both here in Pecos and

19    they are outstanding lawyers.

00:50    20        Sometimes I know as a lawyer, I got fired

21    and I fired a few clients sometimes, too.  So it works

22    both ways.  And so sometimes it's just -- I just want to

23    make sure -- this is so important that you have

24    confidence in who you are using, and I think Mr. Wall

00:51    25    and Mr. White probably have been giving you very good

advice.  Sometimes I had clients that didn't like the
advice I gave them and sometimes they just needed to get
somebody else so that, you know, they might could have
confidence in what they are doing, Mr. Young.

00:51

            And so I'm going to -- I'm going to
appoint new counsel for you and I will give you 14 days
to get me those names and I will try to appoint those
gentlemen or ladies.

            THE DEFENDANT:  Can I say one thing, Your

00:51

Honor?

            THE COURT:  Yes, sir.

            THE DEFENDANT:  The thing, it wasn't the
matter of the individuals being -- I wasn't never
insinuating they wasn't competent or anything or that it

00:51

was personal.  I guess you could call it professional
conflict.  I feel it reached the degree that, you know,
urgency for myself.  That's why I wrote the Court.

            THE COURT:  That's the reason we had this
hearing and that's the reason I'm going to appoint you

00:51

new counsel.  I'm going to ask Mr. Wall and Mr. White to
make available to new counsel whatever discovery you
have so we don't have to replicate all of that over
again, so that y'all -- and I know you will.

            But I just ask you to do that and so

00:52

Ms. Marroquin, if we will do an order that gives

1    Mr. Young 14 days to get to me the names of those

2    lawyers and then see if -- and I will check to make sure

3    they are qualified to handle death penalty cases and

4    we'll go from there.

00:52    5              Mr. Hoffman, can you think of anything

6    else we need to do today on this matter?

7              MR. HOFFMAN:  I would just inquire if the

8    previous scheduling order will remain in effect?

9              THE COURT:  Well, let's get the new

00:52   10   lawyers in place and I will let them contact you and

11   y'all discuss it and see if we can agree.  Obviously, if

12   they are coming on board, I don't know, are there some

13   dates coming up in a hurry on the scheduling order.

14             MR. HOFFMAN:  I believe it will be another

00:52   15   month or two before my response is due.

16             THE COURT:  Let's get the new lawyers in

17   place and I will let them -- if y'all will confer and if

18   you need some change or if they need some change in the

19   scheduling order, we'll -- I will certainly re-look at

00:53   20   that again.

21             MR. HOFFMAN:  Thank you, Your Honor.

22             THE COURT:  Mr. Wall, anything that you

23   would like to add?

24             MR. WALL:  I don't think anything needs to

00:53   25   be added, Judge Junell.  Thank you.

1          THE COURT:  Mr. White, anything else?

2          MR. WHITE:  Nothing else.

3          THE COURT:  Mr. Young anything else?

4          THE DEFENDANT:  No, sir.

00:53   5          THE COURT:  All right.  Well, you are

6  remanded back to the custody of the Texas Department of

7  Criminal Justice.

8          This hearing is adjourned and this Court

9  will be adjourned until tomorrow morning at 9:00 a.m.

00:53   10  Thanks very much.

11          THE BAILIFF:  All rise.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1  THE STATE OF TEXAS          )

2  COUNTY OF MIDLAND           )

3          I, Jane McGill, Certified Shorthand Reporter

4  Number 1759 for The State of Texas, do hereby certify

5  that the facts stated by me in the caption hereof are

6  true, and that the said witness did make the above and

7  foregoing answers in response to questions propounded as

8  shown, and that I did, in computerized stenotype

9  shorthand, report said proceedings and that the above

10 and foregoing pages contain a full, true and correct

11 computer-assisted transcription of my computerized

12 stenotype shorthand notes taken on said occasion.

13         I further certify that I am neither counsel

14 for, related to, nor employed by any of the parties or

15 attorneys in the action in which this proceeding was

16 taken, and further that I am not financially or

17 otherwise interested in the outcome of the action.

18         Witness my hand this 29th day of July,

19 2008.

20

21

          /s/ Jane McGill

22 Jane McGill, Texas CSR No. 1759
   NM CSR No. 125, Expires 12/31/08

23 Permian Court Reporters, Inc.
   Firm Registration No. 155

24 P.O. Box 10625
   Midland, Texas  79702

25 TEL:   432-683-3032
   FAX:   432-683-5324