unless the evidence possessed "an exculpatory value" that was apparent before it was destroyed, and the evidence was of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means. *Trombetta*, 467 U.S. at 488-89.

1144. Under *Trombetta*, Mr. Young's constitutional rights were violated. The court looks at whether the lost evidence had "an exculpatory value" that was apparent before the evidence was destroyed, and whether the evidence was of a nature that the defendant could not obtain comparable evidence by other reasonable means. *Trombetta*, 467 U.S. at 489. Having "exculpatory value" does not mean that under *Trombetta* a defendant must establish that the lost evidence would have exonerated him. Were that the standard, proof that such evidence once existed would be tantamount to proof of innocence entitling a defendant to a dismissal wholly apart from the fact that the evidence was destroyed or lost. Rather, the *Trombetta* standard should be met when it is apparent that: (1) the evidence was exculpatory to some degree, and (2) the defendant is prejudiced by its loss or destruction because he is left unable to establish the full extent of its exculpatory nature. *Id.* In other words, if the full extent of the exculpatory nature were apparent to the police prior to the loss or destruction of the evidence, proof of that fact at trial would in most cases be the equivalent of having the evidence at trial, and defendant would not be harmed by its loss.

1145. Accordingly, the intentional destruction of the 7-Eleven videotape violated the federal Constitution because the videotape was prima facie exculpatory (in that it showed that Page and Petrey were not being held against their will and were free to go as Mr. Young walked around the 7-Eleven for eleven minutes without a weapon and it was destroyed before the full extent of their exculpatory nature could be determined.

1146. Second, the State's loss or destruction of the shell casings located on the ground in front of the house where Douglas was first shot would have been material to establish that Mr. Young did not shoot Douglas, but that Mr. Page shot him while standing outside the car.

1147. And third, the failure to investigate the place where Petrey was kidnapped resulted in the failure to interview key eyewitnesses to the event - witnesses who would have identified the kidnapper as Page, not Mr. Young.

1148. The second prong of the *Trombetta* requirements, that the evidence be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means, is clearly met in the case of the video tape because the video tape itself would have been the best evidence of how calm Mr. Young was, how long he was in the 7-Eleven, and that Mr. Page and Mr. Petrey were not kidnapped by Mr. Young. Sanctions should have been imposed for the destruction of the videotape. The instruction given by the court did not cure the prejudice to Mr. Young, and was no substitute for actually showing the jury the videotape.

1149. With respect to the shell casings found at the house where Douglas was initially shot, aside from the ballistics evidence that showed that Douglas was shot from the left, there was no comparable evidence to show that Douglas was shot by Page from outside of the vehicle, which would have refuted the State's theory that Mr. Young shot him inside the car from the passenger's seat.

1150. And with respect to the eyewitnesses at the grocery store parking lot, there was no comparable evidence to show that Page, not Mr. Young, was the person who kidnapped Petrey.

1151. The trial court should have imposed sanctions as a result of the State's loss/destruction of material evidence and habeas relief is required.[88] Assuming arguendo, that the prosecution's intentional destruction of evidence did not rise to the level of a violation of federal due process, an alternative sanction should have been issued. Furthermore, trial counsel was ineffective for failing to move for sanctions.

### D.  Mr. Young Received Ineffective Assistance of Appellate Counsel

1152. Mr. Young was also denied his right to effective appellate counsel. The *Strickland* standard also applies to claims of ineffective assistance of appellate counsel. *See Ries*, 522 F.3d at 531; *Amdor v. Quarterman*, 458 F.3d 397, 411 (5th Cir. 2006).

1153. J. K. (Rusty) Wall was appointed as appellate counsel on Mr. Young's behalf on December 26, 2002. (CR at 691.) Mr. Wall failed to raise critical claims on Mr. Young's behalf, claims that were readily apparent from the record, including those noted throughout this Petition.

1154. To the extent that this Court finds that the constitutional violations noted herein were not presented to the CCA on direct review and were apparent from the trial record, then appellate counsel rendered constitutionally ineffective assistance to Mr. Young, through their failure to adequately investigate and raise

---

[88] The Supreme Court's decision in *Arizona v. Youngblood*, 488 U.S. 51, 109 S. Ct. 333, 102 L. Ed. 2d 281 (1988), does not require a different result. *Youngblood* holds that under the due process clause, "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." *Youngblood*, 488 U.S. at 58. As the *Youngblood* Court pointed out, however, the "presence or absence of bad faith by the police for purposes of the due process clause must necessarily turn on the police's knowledge of the exculpatory value of the evidence at the time it was lost or destroyed." 488 U.S. at 56, n. 1. Intentional destruction of evidence by the individual having knowledge of its exculpatory character must meet this standard, even if there is no claim that the destruction was malicious.

these issues. *See Evitts v. Lucey*, 469 U.S. 387, 105 S. Ct. 830, 83 L. Ed. 2d 821 (1985).

1155. The denial of his right to effective assistance of appellate counsel substantially prejudiced Mr. Young and had a substantial and injurious effect on the verdict. But for the denial of this right, it is reasonably probable that a more favorable result would have been attained.

1156. Under these circumstances, the adversarial system completely broke down, and Mr. Young was left without meaningful representation. Although many of counsel's errors were, by themselves, so egregious as to require reversal, the extraordinary accumulation of errors and omissions over the course of the trial created a total breakdown in the adversarial process, so that prejudice is conclusively presumed. Even assuming a showing of prejudice is required, Mr. Young has made that showing here.

### E. The Cumulative Effect Renders All Phases of Mr. Young's Trial Fundamentally Unfair

1157. Mr. Young's conviction and sentence of death were unlawfully and unconstitutionally imposed in violation of his rights to due process of law, equal protection, effective assistance of counsel, a fair trial, and an accurate and reliable penalty determination guaranteed by the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution because of the cumulative and inter-related errors that occurred at the guilt and penalty phases of trial.

1158. The Supreme Court has established that the combined effect of multiple trial court errors violates due process where it renders the resulting criminal trial fundamentally unfair. *Chambers v. Mississippi*, 410 U.S. 284, 298, 302-03, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973). For that matter, the cumulative effect of multiple errors violates due process even where no single error rises to the level of a constitutional violation or would independently warrant reversal.

*Chambers*, 410 U.S. at 290 n.3; *see also Montana v. Egelhoff*, 518 U.S. 37, 53, 116 S. Ct. 2013, 135 L. Ed. 2d 361 (1996), *Taylor v. Kentucky*, 436 U.S. 478, 487 n.15, 98 S. Ct. 1930, 56 L. Ed. 2d 468 (1978); *see Coble v. Quarterman*, 496 F.3d 430, 440 (5th Cir. 2007) (cumulative errors of a constitutional dimension).

1159. Mr. Young refers to all of the allegations pled herein as well as claims set forth by Mr. Young in his direct appeal and state habeas application and, by this reference, incorporates them herein as though set forth in full.

1160. Each of the errors at Mr. Young's guilt and punishment trials standing alone require that he be granted relief. The guilt phase errors alleged in Claims One, Three, Five, Six, Seven, Eight, Nine, Ten, Eleven, Twelve, Twenty-Four, and Twenty-Five mandate habeas relief and ultimate reversal of the guilt phase verdict.

1161. Moreover, reversal of the death sentence and habeas relief is mandated, because the foregoing constitutional violations had a harmful effect on the punishment phase verdict. The effect of each and all of these guilt phase issues must be added to the subsequent punishment phase errors in the evaluation of cumulative error in both guilt and punishment phases. However, because the issues resolved at the guilt phase are fundamentally different from the question resolved at the punishment phase, the possibility exists that an error might be harmless as to the guilt determination, but still prejudicial to the punishment determination. *Smith v. Zant*, 855 F.2d 712, 721-22 (11th Cir. 1998) (admission of confession harmless as to guilt but prejudicial as to sentence).

1162. The failings of the state's case must be considered because "a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Strickland*, 466 U.S. at 696; *see also Glasser v. United States*, 315 U.S. 60, 67, 62 S. Ct. 457, 86 L. Ed. 680 (1942) ("[Where] the scales of justice may be delicately poised between

guilt and innocence . . . error, which under some circumstances would not be ground for reversal, cannot be brushed aside as immaterial since there is a real chance that it might have provided the slight impetus which swung the scales toward guilt.").

1163. "Although the guilt and penalty phases are considered 'separate' proceedings, we cannot ignore the effect of events occurring during the former upon the jury's decision in the latter." *Magill v. Dugger*, 824 F.2d 879, 888 (11th Cir. 1987). Further, Mr. Young's sentence of death was unlawfully and unconstitutionally imposed as alleged in Claims Two, Four, Five, and Thirteen through Twenty, and Twenty-Four and Twenty-Five. Such violations mandate habeas relief and ultimate reversal of the punishment phase verdict because the cumulative effect of the punishment phase errors requires reversal of Mr. Young's death sentence. *Johnson v. Mississippi*, 486 U.S. 578, 108 S. Ct. 1981, 100 L. Ed. 2d 575 (1988); *Zant*, 462 U.S. 862.

1164. These errors variously deprived Mr. Young of his rights to liberty, fair trial, an unbiased jury, effective assistance of counsel, due process, to present a defense, heightened capital case due process, a reliable and non-arbitrary determination of penalty, and equal protection under the law. Taken together, these errors undoubtedly produced a fundamentally unfair trial and a new trial is required, due to cumulative error. *Derden v. McNeel*, 978 F.2d 1453 (5th Cir. 1992); *cf. Taylor v. Kennedy*, 436 U.S. 478, 98 S. Ct. 1930, 56 L. Ed. 2d 468 (1978) (several flaws in state court proceedings combine to create reversible federal constitutional error).

F.   **Mr. Young is Innocent of Capital Murder**

1165. Mr. Young's convictions, confinement, and sentence violate the Fifth, Sixth, Eighth, and Fourteenth Amendments of the United States Constitution because he is actually innocent of the capital murder of which he was convicted.

*See Sawyer v. Whitley*, 505 U.S. 333, 336, 112 S. Ct. 2514, 120 L. Ed. 2d 269 (1992); *Thomas v. Calderon*, 151 F3d. 918, 924 (9th Cir. 1998); *see also Herrera v. Collins*, 506 U.S. 390, 113 S. Ct. 853, 122 L. Ed. 2d 203 (1993).

1166. Here, Mr. Young is actually innocent of capital murder for the multiple reasons discussed above. (*See* Claims One, Three, and Five through Twelve.) Had the constitutional errors described above not occurred, "it is more likely than not that "no reasonable juror' would have convicted" Mr. Young. *Schlup v. Delo*, 513 u.S. 289, 329, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995).

### G.   Conclusion

1167. The foregoing violation of Mr. Young's constitutional rights constitutes structural error and warrants the granting of this Petition without any determination of whether the violations substantially affected or influenced the jury's verdict. *Brecht*, 507 U.S. at 637-38 & n.9. However, even assuming the harmless error doctrine applies to this claim, the foregoing constitutional violations so infected the integrity of the proceedings that the error cannot be deemed harmless. The foregoing violation of Mr. Young's rights had a substantial and injurious effect or influence on Mr. Young's convictions and sentence, rendering them fundamentally unfair and resulting in a miscarriage of justice.

1168. The constitutional violations set forth in this claim alone mandate relief from the convictions and sentence. However, even if these violations do not mandate relief standing on their own, relief is required when this claim is considered together with the additional constitutional errors outlined in the remainder of this Petition. Cumulatively, these errors mandate relief from Mr. Young's convictions and sentence.

1169. In addition, all prior counsel provided the ineffective assistance of counsel for failure to raise the bases for relief alleged in these claims. *Strickland*,

466 U.S. 668. Due to the ineffectiveness of prior counsel in raising portions of the foregoing claim, this claim could not have been brought at a earlier time.

## VIII.

## PRAYER FOR RELIEF

WHEREFORE, Clinton Lee Young prays that the Court:

1. After full consideration of the issues raised in this Petition, issue a writ of habeas corpus to the end that Mr. Young might be discharged from his unconstitutional confinement and restraint and relieved of his unconstitutional convictions and sentences of death and other sentences;

2. Order Respondent to answer this Petition by specifically admitting or denying each allegation and claim herein;

3. Permit Mr. Young, who is indigent, to proceed without prepayment of costs and fees and grant him authority to obtain subpoenas without fees for witnesses and documents necessary to prove the facts alleged in this Petition;

4. Conduct an evidentiary hearing at which proof may be offered concerning the allegations in this Petition or any affirmative defenses presented by Respondent;

5. Require Respondent to bring forth the entire state court record so that the Court can review those parts of the record that are relevant to the issues and defenses raised in this proceeding;

6. Continue the stay of Mr. Young's execution pending final disposition of this matter;

7. Grant Mr. Young sufficient funds to secure investigation and expert assistance as necessary to prove the facts alleged in this Petition;

8. Grant Mr. Young the authority to obtain subpoenas for witnesses and documents;

9. Grant Mr. Young the authority to conduct discovery;

\\
\\

10. Permit Mr. Young to amend this Petition, if necessary; and,

11. Grant such other and further relief as may be appropriate and necessary to dispose of the matter as justice may require.

Respectfully submitted,

Dated: October 17, 2008    By [signature]
Donald Vernay
1604 Golf Course Road SE
Rio Rancho, NM 87124
(505) 892-2766
(505) 892-8119 (fax)
State Bar of Texas #24035581
minimal243@yahoo.com


SEAN K. KENNEDY
Federal Public Defender

Dated: October 17, 2008    By [signature]
BRAD D. LEVENSON
Deputy Federal Public Defender

Dated: October 17, 2008    By [signature]
MARGO A. ROCCONI
Deputy Federal Public Defender

Attorneys for Petitioner
CLINTON LEE YOUNG

## IX.

## VERIFICATION OF PETITION

I, Brad D. Levenson, declare as follows, under penalty of perjury:

1. I am an attorney admitted to practice law in the State of California and am an attorney with the Office of the Federal Public Defender. I am admitted to practice in this Court.

2. I have read the foregoing Petition for Writ of Habeas Corpus and declare that the facts alleged are true to the best of my knowledge based upon my reading of what I know to be true copies of documents in this action.

3. I am authorized by Clinton Lee Young to file this Petition for Writ of Habeas Corpus on his behalf. I make this verification because Mr. Young is incarcerated in a state different than that in which my office is located, and because the truth and accuracy of the facts contained herein are more within my knowledge than that of Mr. Young.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Executed this 14 day of October, 2008, at Los Angeles, California.

_____
BRAD D. LEVENSON
Deputy Federal Public Defender

Clinton Lee Young   Oct. 14, 2008

## X.

## VERIFICATION REGARDING AUTHENTICITY OF EXHIBITS

I, Brad D. Levenson, declare as follows, under penalty of perjury:

1. I am an attorney admitted to practice law in the State of California and am a Deputy Federal Public Defender appointed to represent Clinton Lee Young, who is confined and restrained of his liberty at the Polunksy Unit, Livingston, Texas.

2. The originals of all Exhibits filed by Mr. Young are in the custody and control of counsel for Mr. Young whose office is located at 321 East 2nd Street, Los Angeles, California. Viewing of the originals are available upon request.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Executed on October 17, 2008, at Los Angeles, California.

*/s/ Brad D. Levenson*
BRAD D. LEVENSON
Deputy Federal Public Defender

## PROOF OF SERVICE

I, the undersigned, declare that I am a resident or employed in Los Angeles County, California; that my business address is the Office of the Federal Public Defender, 321 East 2nd Street, Los Angeles, California 90012-4202; that I am over the age of eighteen years; that I am not a party to the above-entitled action; that I am employed by the Federal Public Defender for the Central District of California, who is a member of the Bar of the United States District Court for the Central District of California, and at whose direction I served the **FIRST AMENDED PETITION FOR WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY; MEMORANDUM OF POINTS AND AUTHORITIES; EXHIBITS**.

On , following ordinary business practice, service was:

| [ ] Placed in a closed envelope, for collection and hand-delivery by our internal staff, addressed as follows: | [ ] By hand-delivery addressed as follows: | [X] Placed in a sealed envelope for collection and mailing via United States Mail, addressed as follows: |
|---|---|---|
| Stephen M. Hoffman<br>Assistant Attorney General<br>P.O. Box 12548, Capitol Station<br>Austin, TX 78711 | | Clinton Young #999447<br>Polunsky Unit<br>3872 Fm. 350 South<br>Livingston, TX 77351 |

This proof of service is executed at Los Angeles, California, on October 17, 2008.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

DOLORES COULTAS