SEAN K. KENNEDY (California Bar No. 145632)
Federal Public Defender
MARGO A. ROCCONI (California Bar No. 156805)
(E-mail: Margo_Rocconi@fd.org)
JOSEPH A. TRIGILIO (California Bar No. 245373)
(E-Mail: Joseph_Trigilio@fd.org)
Deputy Federal Public Defenders
MARGARET A. FARRAND (California Bar No. 235295)
Legal Research & Writing Attorney
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-2854
Facsimile: (213) 894-0036

Attorneys for Petitioner
CLINTON LEE YOUNG

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF TEXAS

MIDLAND DIVISION

| | |
|---|---|
| CLINTON LEE YOUNG,<br><br>    Petitioner,<br><br> v.<br><br>STEPHEN WILLIAMS, Director, Texas Department of Criminal Justice, Correctional Institutions Division,<br><br>    Respondent. | NO. 7:07-CV-00002-RAJ<br><br>**DEATH PENALTY CASE**<br><br>**PETITIONER'S REPLY TO RESPONDENT'S OPPOSITION TO PETITIONER'S REQUEST FOR A CERTIFICATE OF APPEALABILITY** |

Young has shown that this Court's denial of a COA was premised on factual and legal errors. Respondent's opposition to Young's request for a certificate of appealability (COA) misstates Young's arguments, ignores the relevant evidence, and assumes that this Court made findings that it explicitly did not make.

I. **Respondent Repeats the Court's Mistaken View of the Law and Facts Relevant to Young's *Brady/Napue* Claim**

Respondent's opposition misstates the errors Young highlighted in his COA request. He suggests that Young disagrees with the well-established "unilateral expectation" exception to *Brady* disclosure. (Dkt. No. 144, Opposition to COA ("Opp."), at 5-6.) Young does not dispute that a "unilateral expectation or subjective belief [that a witness] will receive a benefit in exchange for their testimony" is outside *Brady*'s reach. (*Id*.) (internal citation to this Court's order omitted.) Rather, the error Young exposes is that the "unilateral exception" rule is inapposite in this case. The *Brady* withholdings here are not subjective beliefs by witnesses Mark Ray and David Page; what was withheld from the defense were inducements offered by the prosecution to Ray and Page in exchange for their testimony. (Dkt. No. 137 at 2.)

By misstating Young's argument, Respondent ignores the legal error committed by the state court and perpetuated by this Court's order: that only an enforceable deal or firm promise need be disclosed pursuant to *Brady*. (*See* Order at 107, 127, 129.) Nor does Respondent address the state court's factual finding upon which the error is based. The state court made a factual finding that the prosecution conveyed to Ray's attorney that it would "probably make [Ray] an offer that he could not refuse," that the conveyance "could have constituted a motive or inducement on the part of Mark Ray for his testimony against Clinton Young," and that "the statement was not disclosed to the defense." (State Order at 63.) Respondent, in another brief, now admits that he "accepts the factual findings" by the state court. (Dkt. No. 146 at 6 n.4.) The conclusion that these facts do not constitute a *Brady* violation is a legal mistake.

Respondent does not address the basis of Young's request: that the prosecution's

1

conveyance to Ray's attorney that they would make Ray an offer he cannot refuse amounts to a "possibility of reward" subject to *Brady* disclosure. *United States v. Bagley*, 473 U.S. 667, 684 (1985); *see also LaCaze v. Warden Louisiana Correctional Inst. for Women*, 645 F.3d 728, 735 (5th Cir. 2011) (Brady not limited to cases where "the state and the witness have reached a bona fide, enforceable deal.") Despite Respondent's attempts to obfuscate the issue, the simple reality is that the state court found facts demonstrating a *Brady* violation, but it, along with this Court, applied an erroneous legal standard to those facts. Applying the correct law, this Court's conclusion that neither Ray nor Page were offered inducements subject to *Brady* disclosure is at least debatable.

The remainder of Respondent's opposition to Young's COA request fails to support this Court's conclusion that the denial of Young's *Brady* claim is not debatable. First, Respondent overlooks the misstatements of Hurlburt's testimony in place of making a blanket assertion that "the court is indisputably familiar with the record[.]" (Opp. at 6-7.) Regardless of its familiarity with the record, the Court misstated the relevant testimony. For example, the Court order states that Ray testified at the state writ hearing that his trial testimony denying the existence of any promises of leniency was "true." (Order at 104.) In fact, Ray testified that his testimony at trial was "not exactly the truth." (3 RWR2d 214.) This Court's order also stated that Ray's lawyer, Hurlburt, testified that "he had never heard of" any deal offered to Ray and "categorically denied" that a deal was offered. (Order at 103, 104.) In fact, Hurlburt testified that he could not remember whether Ray was offered a deal and acknowledged that it "could have happened." (3 RWR2d 86.) Respondent fails to address any of these misstatements; these errors render this Court's denial of Young's *Brady* claim debatable, at least.

Instead, Respondent focuses on Hurlburt's testimony denying the existence of *"a deal*," wherein Hurlburt opines that he would not have let Ray testify falsely about the existence of a *deal*. (Opp. at 6) (emphasis added.) This myopic focus on an explicit "deal" repeats the legal error that is the crux of Young's motion for reconsideration -- that *Brady* includes more than the disclosure of "formal" deals and includes any incentive, whether

2

informal or subtle, offered by the prosecution to a witness in exchange for their testimony. Respondent has not addressed this issue.

Regarding the *Brady* evidence concerning David Page, Respondent cherry-picks what he opposes and ignores the crux of Young's argument. Respondent asserts as "credible" the prosecution's testimony at Young's state writ hearing that "any possibility of an offer would be contingent on Page passing a polygraph (which Page flunked) and developing evidence showing that he was not Petrey's killer." (Opp. at 8.) Respondent ignores, however, the contemporaneous (March 16, 2002) letter from Page's attorney to Page that was written *after* Page failed the polygraph, and that explained that (1) the prosecution was *still* "talking about, but not committing to a 30-year plea offer" and (2) is threatening to re-indict you for capital murder, unless you 'come clean.'" (2nd Wit Hrg., state's ex. 34.) It is at least debatable, if not obvious, that a contemporaneous letter written in 2002 is more credible as to the state of events at that time then a prosecutor's self-serving (to avoid being found to have committed misconduct) testimony in 2010. Moreover, the prosecution's continued conveyance of the "possibility" of a deal constitutes an incentive to testify favorably for the state and should have been disclosed pursuant to *Brady*. Respondent fails to address these points.

Finally, Respondent illogically characterizes as not believable Page's letter to his stepmother, instead crediting his testimony at the 2010 writ hearing. Page's letter to his stepmother indicates that he was offered a deal (*see* Dkt. No. 137 at 4); it was written without any knowledge by Page that the letter would be read by officials or in support of Young's *Brady* claim. He thus had no incentive to lie in that letter. In contrast, he had a strong incentive to lie at the state writ hearing (to defeat a claim that he committed perjury at Young's trial). Accordingly, at the very least, it is debatable that Page's contemporaneous letter to his stepmother written in 2002 is more credible than his self-serving testimony at Young's state writ hearing eight years later.

**II. Respondent Fails to Rebut the State Court's Fact-finding Relevant to the Timeliness of Young's *Brady* Claim.**

Young's *Brady* claim is timely because it was raised within one year of "the date on

3

which the factual predicate of the claim . . . could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D). He discovered the factual predicate of his claims in an interview with Mark Ray in July 2008, after conducting a prior interview of Ray in 2005 wherein Ray withheld the information regarding the state's plea offers. Young filed his claims in this Court on October 20, 2008, less than year after Ray first provided the information. This Ccourt stayed the proceeding while Young presented his claim to state court. The state court made a factual finding that Young was diligent in presenting his claim, and the court therefore considered his claim on the merits.

Respondent makes no attempt to refute the state court's factual finding regarding Young's diligence in uncovering the factual predicate of his *Brady* claim, and instead makes confusing and erroneous arguments. First, Respondent complains that he did not have the opportunity to challenge the state court's finding because "Young did not raise this argument in his second amended petition and instead waited to raise it in his reply brief." (Opp. at 9.) This attempt to fault Young for the ordering of the arguments ignores the briefing schedule ordered by this Court, that (1) Young file an amended petition that includes "all claims petitioner wishes this Court to consider," (2) Respondent then file an answer that "explicitly assert[s]" "the defense that the petitioner has procedurally defaulted on any claim[.]" (Dkt. No. 79 at 2-3.) Young complied with the briefing order and Respondent did not.

Second, Respondent attempts to blame his failure to challenge the state court's finding of Young's diligence by stating that he "is not permitted a surreply under the rules." (Opp. at 9.) This is incorrect; Respondent is permitted under the local rules to file a surreply if he first seeks "leave of the court[.]" W.D. Tex. Civ. R. 7(f)(1). Respondent did not seek leave to file a surreply.

Third, for the first time Respondent attempts to contradict the state court's factual finding regarding the factual predicate of Young's *Brady* claim by suggesting that the factual basis of the claim "has been available since trial." (Opp. at 10.) He further states that Ray's declaration stating that Ray would not divulge the state's offer to him prior to July 2008 is not credible. (*Id*.) These assertions not only contradict the state court's finding when it

4

considered Young's *Brady* claim to be timely, it belies common sense. Young's *Brady* claim asserts that the state withheld evidence of inducements offered to Ray and Page *at trial*, and there is no dispute that the prosecutors, Ray, and Page all denied the existence of such a deal at trial. Thus, the factual basis of the claim could not have been available to Young at that time. Nor has Respondent suggested any reason for why or how Ray's declaration about his willingness to come forward is not credible; Ray has no incentive to help Young and every incentive to confirm his trial testimony (and thus not be guilty of perjury).

Finally, Respondent suggests that Young should have interviewed the other witnesses who could have corroborated Ray's new evidence of a *Brady* violation before talking to Ray in July 2008. (Opp. at 11.) This suggestion would have required Young to either be clairvoyant about facts he did not know, or to engage in a fishing expedition to search for claims where he knew none existed. Engaging in "fishing expeditions" is a practice that Respondent surely does not support. *See Ward v. Whitley*, 21 F.3d 1355, 1367 (5th Cir. 1994) (habeas discovery rule "does not authorize fishing expeditions"). Accordingly, Respondent fails to contest the factual finding by the state court that Young was diligent in identifying the factual predicate of his *Brady* claim, making this Court's denial of the claim based on untimeliness, at the very least, debatable.

## III. Respondent Ignores Young's Arguments for Why the Procedural Default Applied to Young's IAC Claim is, at Least, Debatable.

Young moves this Court to grant a COA on his IAC claim because its initial denial of a COA was premised on factual and legal errors. This first basis for denying a COA on Young's IAC claims was because the Court determined that Young "procedurally defaulted on virtually all of his ineffective assistance complaints[.]" (Order at 441.) Young showed through his request for a COA that the Court's application of a procedural default was mistaken.

Regarding the first basis for the COA denial, this Court erred in applying a procedural default that Respondent did not assert. Now, in a footnote in his Opposition to the instant motion, Respondent raises for the first time a procedural default defense to Young's IAC

claim regarding the ballistics evidence. (Opp. at 13 n. 9.) Respondent justifies this tardy attempt by claiming it is "his first procedurally available opportunity following Young's failure to raise the 2006 affidavit in his second amended petition to raise the default defense." (*Id*.) Respondent is wrong; this Court explicitly ordered him to file an answer to the second amended petition that includes any procedural-default defense that Respondent sought to raise. (Dkt. No. 79 at 3.) An opposition to a post-judgment motion is accordingly not Respondent's first chance to raise a procedural default defense to Young's claims.

Respondent deflects the debatability of this Court's imposition of a procedural default to Young's IAC claim by instead focusing on the *Pinholster* issue regarding the 2006 and 2008 ballistics reports.[1] As explained more fully in the reply to Respondent's Opposition to the Rule 59(e) motion filed concurrently herewith, the complaint that the 2008 ballistics report is *Pinholster* barred is a red herring; it provides virtually the same facts and evidence that indisputably *was* presented to the state court in 2006, and thus this Court may consider it. *Higgins v. Cain*, 720 F.3d 255, 262 (5th Cir. 2013).

**IV. Respondent Improperly Imputes Reasoning into the Court's Order That it Did Not Engage in to Argue That the Denial of Young's IAC Claim Is Not Debatable.**

In denying a COA on Young's IAC claims, this Court chose to explicitly set forth its reasoning. (Order at 438-41.) It denied a COA based on (1) an erroneous application of procedural bars (discussed above) and (2) this Court's view that "[r]easonable minds could not disagree over this Court's conclusion that none of petitioner's complaints . . . satisfy the prejudice prong of *Strickland* analysis." (Order at 438.) Regarding the second basis, Young's COA request explained that this Court's prejudice analysis overlooked Young's evidence and involved legal mistakes. (Dkt. No. 137 at 6-10.) This Court found no prejudice by concluding that Young's guilt was "overwhelming;" and this Court set forth each item of evidence supporting that view. (*Id*.) Young's request for COA demonstrated how the Court's view of those items of evidence were mistaken, and Respondent's opposition fails

---

[1] This issue was briefed in Young's motion to alter amend the judgment (Dkt. No. 136) and was not raised as the primary argument in Young's request for a COA. (*See* Dkt. no. 137.)

6

to meaningfully respond to Young's arguments.

First, this Court found that Young's guilt of the Douglas shooting can be considered "overwhelming" because there were "three eyewitnesses." This Court failed, however, to acknowledge that these witnesses were accomplices, and that the jury was accordingly instructed to view their testimony with caution. (*See* 5 CR 825-29.) Respondent addresses this error by asserting that this Court was "obviously" aware that the eyewitnesses were accomplices. (Opp. at 15.) He misses the point: the fact that the Douglas shooting relied on eyewitness testimony from accomplices, whose testimony was to be viewed with caution, renders debatable the conclusion that their testimony provides "overwhelming" evidence of Young's guilt.

Second, this Court denied a COA based on a lack of prejudice by relying on Patrick Brooks's testimony about Young's alleged confession. (Order at 438.) Respondent entirely fails to address the fact that this Court mistakenly omitted in its prejudice analysis the fact that trial counsel failed to introduce evidence undermining Brooks's testimony, and indicating that Ray confessed to Brooks.

Similarly, Respondent fails to respond to the fact that this Court relied on the ballistics evidence presented at trial to determine that Young's guilt was overwhelming, and failed to consider the ballistics evidence that counsel *failed to present at trial* in its prejudice analysis. By failing to consider the evidence that trial counsel failed to present when assessing prejudice, this Court committed legal error.

More generally, Respondent dismisses each of the facts that this Court mistook or overlooked by relying on this Court's blanket statement that "there is no reasonably probability that, but for the alleged failures of [Young's] trial counsel identified by [Young] . . . the outcome of either phase" would have been different. (Opp. at 15-16, quoting Order at 441.) That statement, however, must be viewed in context. This Court explicitly set forth the reasons it found there was no prejudice, and, as shown in Young's request for COA, those reasons were premised on mistaken facts and an erroneous application of the *Strickland* prejudice analysis. Accordingly, the denial of Young's IAC claim is at least debatable.

7

Respectfully submitted,

SEAN K. KENNEDY
Federal Public Defender

DATED: March 7, 2014          By:   */s/   Margo Rocconi*
                                    MARGO A. ROCCONI
                                    Deputy Federal Public Defender

8

# CERTIFICATE OF SERVICE

      I hereby certify that on the 2nd day of May, 2014, I electronically filed the following documents:, with the Clerk of Court using the CM/ECF system which will send notification of **PETITIONER'S REPLY TO RESPONDENT'S OPPOSITION TO PETITIONER'S REQUEST FOR A CERTIFICATE OF APPEALABILITY** to the following:

Stephen M. Hoffman
Assistant Attorney General
P.O. Box 12548
Capitol Station
Austin, TX 78711-2548

                                            */s/ Margo Rocconi*
                                      MARGO A. ROCCONI